SCIKO et al., Appellants,

v.

CLEVELAND ELECTRIC ILLUMINATING COMPANY et al., Appellees.

[Cite as *Sciko v. Cleveland Elec. Illum. Co.* (1992), 83 Ohio App.3d 660.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 63443.

Decided Nov. 16, 1992.

Nicholas M. DeVito and Christopher D. Kuebler, for appellants.

Gregory A. Cada and George R. Hicks, for appellees.

ANN McMANAMON, Judge.

This appeal challenges the purported dismissal of a negligence action on a Civ.R. 12(B)(6) motion as well as the failure to join an indispensable party pursuant to Civ.R. 19.

Robert and Gloria Sciko filed a complaint against the Cleveland Electric Illuminating Company ("CEI") on November 7, 1991 after an allision between

Robert Sciko's powerboat and a CEI breakwall located in Eastlake. The action also named three other parties, who were later dismissed by the plaintiffs.

In their first cause of action, the Scikos claimed CEI was negligent in not providing proper lighting on its breakwall and specifically in one or more of the following respects:

"19.  * * *

"a.  Failure to warn the general public of the dangers and hazards of the breakwall when navigating at night given the improper color displayed;

"b.  Failure to adequately mark the breakwall;

"c.  Failure to install sufficient numbers of lights;

"d.  Failure to install lights with sufficient candle power; ·

"e.  Failure to install lights at more appropriate locations;

"f.  Allowing a navigation hazard to exist;

"g.  Failure to adequately test, maintain and/or inspect the lighting on the breakwall;

"h.  Failure to ascertain whether the lighting scheme complied with the regulations applicable to private aids to navigation;

"i.  Failure to ascertain whether the permit which allowed the Defendants to maintain a private aid to navigation on the breakwall complied with the regulations applicable to private aids to navigation;

"j.  Failure to provide notice to the general public that the lighting was inadequate, improper or advised mariners to proceed on a dangerous course or one which would likely lead to an allision;

"k.  Improper operation of aids to navigation;

"l.  Improper management of aids to navigation;

"m.  Improper installation of aids to navigation;

"n.  Failure to ensure that the aids to navigation were functioning properly, failure to correct deficiencies in the aids to navigation;

"o.  The aids to navigation were not adequately functioning or displaying their proper characteristics as required by regulations applicable to private aids to navigation;

"p.  Any and all other forms of negligent conduct on the Defendants' part to be proven at the trial of this cause."

In their second cause of action, the Scikos alleged that CEI's acts or omissions were done intentionally or with reckless disregard for the safety of mariners.

Count three of the complaint contained Gloria Sciko's claim for loss of consortium.

On December 12, 1991, the trial court granted the plaintiffs' unopposed motion for judicial notice of the general maritime laws of the United States for claims based on admiralty tort jurisdiction and presented pursuant to concurrent state court subject-matter jurisdiction under the "savings to suitors" clause of Section 1333, Title 28, U.S. Code.

Six days later, CEI filed its motion to dismiss, raising three arguments. Initially, CEI contended that it breached no duty because it complied with all legal duties in the erection, operation and maintenance of private aids to navigation prescribed and imposed by the United States Coast Guard.

In support of this argument, CEI attached, as an exhibit, the affidavit of Ronald Boals, General Manager of the Eastlake CEI Plant. Boals averred that the United States Coast Guard directed CEI to change the lights on its breakwall to green so as to conform with the Modified U.S. Aids to Navigation System and the National Association of Lighthouse Authorities requirements. Also attached to the motion was a letter from Captain F.A. Kelley, Chief, Aids to Navigation Branch, by direction of the Commander of the Ninth Coast Guard District, directing CEI to change the color of the light on its breakwall to green; a follow-up letter from the Coast Guard to CEI approving this change; and the official 1991 Coast Guard Light List for the Great Lakes describing the Eastlake breakwall as green.

Second, CEI posited that, since it followed the dictates and regulations prescribed by the United States Coast Guard, the Scikos should have sued the Coast Guard. On this basis, CEI argued the action should be dismissed for failure to join a necessary/indispensable party pursuant to Civ.R. 19(A)(1), (A)(2)(b) and (B).

Finally, CEI argued that, since the Coast Guard was a necessary party and a state court lacks jurisdiction in suits against that entity (Section 1, Title 14, U.S.Code), the suit should be dismissed pursuant to Civ.R. 12(B)(2).

The plaintiffs responded with a brief in opposition to CEI's motion to dismiss/summary judgment. CEI filed a reply brief, followed by plaintiffs' surreply. On February 25, 1992, the trial court granted CEI's motion to dismiss. It is from this order that plaintiffs timely appeal.

As a preliminary matter, we note that, in support of its motion to dismiss, CEI attached evidentiary documents outside the pleadings. Civ.R. 12(B) provides that when a motion to dismiss for failure to state a claim for relief contains matters outside the pleadings, the motion may be converted into one for summary

judgment provided all parties are given reasonable opportunity to present all materials pertinent to such a motion.

In the plaintiffs' brief in opposition to CEI's motion to dismiss/summary judgment, they also attached evidentiary materials outside the pleadings patently addressing CEI's motion as one for summary judgment. Moreover, both parties on appeal conceded that the motion was converted into one for summary judgment.

Thus, although the trial court's judgment entry indicated it granted CEI's motion to dismiss, we conclude the court actually granted summary judgment. In *State ex rel. Baran v. Fuerst* (1990), 55 Ohio St.3d 94, 563 N.E.2d 713, the Supreme Court stated that "[t]he fact that [a court] had before it matters outside the pleadings suggests that it actually granted a Civ.R. 56 motion for summary judgment, rather than dismissed a complaint pursuant to Civ.R. 12(B)(6)." *Id.* at 97, 563 N.E.2d at 716.

We further find that both parties had actual notice of this conversion as evidenced by the plaintiffs' brief in opposition addressing CEI's motion as one for summary judgment, and both appellate briefs which concede this conversion. Accordingly, we shall review the motion under this standard.

■ In their first assignment of error, the plaintiffs argue that the court erred in dismissing the complaint on the ground that it failed to state a claim for relief. In the alternative, they argue the court erred in finding there were no genuine issues of material fact in granting summary judgment. Since the motion was converted, we will address only the latter argument.

In reviewing a motion for summary judgment, "the burden is upon the party moving for summary judgment to establish that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law." *AAAA Ent., Inc. v. River Place Community Urban Redevelopment Corp.* (1990), 50 Ohio St.3d 157, 553 N.E.2d 597, paragraph two of syllabus. "A motion for summary judgment forces the nonmoving party to produce evidence on any issue for which that party bears the burden of production at trial." *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus.

Civ.R. 56(E) also provides:

"* * * When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

The question presented for our review is whether there exists a genuine issue of material fact as to CEI's negligence in failing to provide proper lighting on its breakwall. Plaintiffs argue that (1) the light on the breakwall should not have been green, but should have been red or white as prescribed by what they claim are the applicable federal regulations; (2) CEI failed to challenge the lighting scheme ordered by the Coast Guard; and (3) CEI had a duty to install markings on the breakwall in addition to the Coast Guard mandate.

CEI relies on a July 27, 1987 letter from the Coast Guard to CEI's lead project engineer, which states:

"This letter is in reference to your private aids to navigation at the Avon Lake CEI Plant, Eastlake CEI Plant and Ashtabula CEI Plant.

"Having reviewed the files for all three lights, these lights must be changed to green to conform with the Modified U.S. Aids to Navigation System and the IALA (International Association of Lighthouse Authorities) requirements. The flash characteristics may remain the same.

" * * *

"Enclosed is a Private Aids to Navigation Application to submit upon completion of the characteristic changes. Also enclosed is information on regulations governing the establishment and maintenance of private aids to navigation, along with sources for obtaining aids to navigation equipment.

"If you have any questions, or need any further assistance, Petty Officer Curtis Savage of my staff will be glad to assist you.

"Thank you for complying with our regulatory requirements.

"Sincerely,

"ss/F.A. Kelley/ss

F.A. KELLEY

Captain, U.S. Coast Guard

Chief, Aids to Navigation Branch

By direction of Commander,

Ninth Coast Guard District"

CEI also attached to its motion a January 20, 1988 letter from Captain L.B. Tyo, Chief, Aids to Navigation Branch, to CEI, stating that "changes" to its Private Aids to Navigation application for the Eastlake intake breakwall light were "approved." It further states that "the appropriate changes to the charts and light list will appear in Ninth District Local Notice to Mariners 01/89."

Plaintiffs maintain that these letters from a "bureaucrat" do not have the force or effect of federal regulations which require the breakwater intake light to be

red or white. They further argue that, despite the Coast Guard directive, CEI failed to object to a "known violation" of a federal regulation.

The United States Coast Guard is charged with the authority to administer the U.S. Aids to Navigation System under Section 83, Title 14, U.S.Code; Section 62.1(a), Title 33, C.F.R.; Section 66.01–3(a), Title 33, C.F.R. "Aids to navigation" is defined as "any device external to a vessel or aircraft intended to assist a navigator to determine position or safe course, or to warn of dangers or obstructions to navigation." Section 62.3, Title 33, C.F.R. The U.S. Aids to Navigation System consists, *inter alia*, of the private aids to navigation system operated by other persons. Section 62.1(a), Title 33, C.F.R.

No person "shall establish and maintain, discontinue, change or transfer ownership of any aid to maritime navigation, without first obtaining permission to do so from the Commandant." Section 66.01–1(a), Title 33, C.F.R. Furthermore, the Commandant of the Coast Guard has delegated "the authority to grant permission to establish and maintain, discontinue, change or transfer ownership of private aids to maritime navigation, and otherwise administer the requirements of this subpart." Section 66.01–3(a), Title 33, C.F.R. Section 62.21(h), Title 33, C.F.R. specifically provides:

"Until 1994, some private aids to navigation may display characteristics at variance with the U.S. Aids to Navigation System. Mariners should exercise caution when using private aids to navigation because private aids are often established to serve the needs of specific users rather than general navigation and their purpose may not be obvious to casual users; and, discrepancies to private aids are often detected, reported, and corrected less promptly than discrepancies to Coast Guard aids to navigation."

It is undisputed that Parts 62, 66 and 67, Title 33, C.F.R. are the applicable federal regulations in the present dispute. Plaintiffs contend, however, that, despite the broad application of Parts 62 and 66, Part 67 specifically applies and requires the CEI breakwall light be red or white.

Section 67.01–1, Title 33, C.F.R. provides:

"(a) The regulations in this part prescribe the obstruction lights and fog signals to be operated as privately maintained maritime aids to navigation on the artificial islands and structures which are erected on or over the seabed and subsoil of the Outer Continental Shelf and in the waters under the jurisdiction of the United States, for the purpose of exploring for, developing, removing and transporting resources therefrom."

"Structures" are defined as including, but not limited to:

" * * * [A]ll drilling platforms, production platforms, quarters platforms, pipe line riser platforms, manifold platforms, loading platforms, boat landings, cais-

sons, well protective structures, tank battery barges submerged on station, drilling barges submerged on location, breakwater barges submerged on location, artificial islands and all other piles, pile clusters, pipes or structures erected in the waters." Section 67.01–5(a), Title 33, C.F.R.

Plaintiffs also rely on the following regulations to support their cause of action. Section 67.05–20, Title 33, C.F.R. states:

"The obstruction lighting requirements prescribed in this part are the minimum requirements only and shall not preclude the maintainer from making application for authorization to establish more lights, or lights of greater intensity than required to be visible at the distances prescribed: *Provided,* That the prescribed characteristics of color and flash duration are adhered to." (Emphasis *sic.*)

Finally, plaintiffs cite Section 67.05–10, Title 33, C.F.R. to support their claim that CEI's breakwall light should not have been green. That section states:

"All obstruction lights required by this part shall be * * * white when marking Class 'A' and 'B' structures, and either white or red, as prescribed by the District Commander, when marking Class 'C' structures. In determining whether white or red lights shall be authorized, the District Commander shall take into consideration matters concerning, but not necessarily limited to, the dimensions of the structure and the depth of water in which it is located; the proximity of the structure to vessel routes; the nature and amount of vessel traffic; and the effect of background lighting." See, also, Section 67.20–5, Title 33, C.F.R. (obstruction lights for Class "A" structures shall be white); Section 67.25–5, Title 33, C.F.R. (obstruction lights for Class "B" structures shall be white); Section 67.30–5, Title 33, C.F.R. (obstruction lights for Class "C" structures shall be white).

"Class 'A' structures" are defined as "structures in the area seaward of the line of demarcation." "Class 'B' and 'C' structures" are defined as "structures shoreward of the line of demarcation." Section 67.01–15(a), Title 33, C.F.R.

Upon review of the relevant portions of Part 67, we find them to be inapplicable to the Eastlake CEI breakwall because that breakwall is not encompassed within the definition of "structures" defined in Section 67.01–5(a), Title 33, C.F.R. Although the examples set forth in this subpart are not exhaustive, it is clear that the definition itself is limited to platforms or barges used for the extraction of resources. The CEI breakwall does not fall under this definition. Nor do we find that the breakwall is used "for the purpose of exploring, developing, removing and transporting resources therefrom."

Parts 62 and 66, however, are applicable. As previously noted, Part 62 grants the Coast Guard the authority to administer private aids to navigation. Section 66.01–1(a), Title 33, C.F.R. provides that in order to change any aid to maritime

navigation, a person must first obtain permission from the Coast Guard Commandant.

The July 27, 1987 letter from the Captain of the Coast Guard, by the direction of the Commander of the Ninth Coast Guard District, to CEI, specifically directed CEI to change the light on its breakwall to "green" in order "to conform with the Modified U.S. Aids to Navigation System and the IALA (International Association of Lighthouse Authorities) requirements." The January 20, 1988 letter, in turn, confirmed this change and approved CEI's Private Aids to Navigation application.

These letters are not "prehistoric letters from a bureaucrat" as characterized by plaintiffs, but clear directives by the Coast Guard pursuant to its authority under Parts 62 and 66. CEI reasonably relied on the Coast Guard directive in placing a green light on the CEI breakwall. Furthermore, since Part 67 is inapplicable, plaintiffs have not demonstrated that a green light on the breakwall was unlawful or that additional lights were required.

We conclude that CEI was not negligent with respect to the color, placement or lack of other lights on its breakwall, since it properly relied on the authority of the Coast Guard in changing the color of the breakwall light. Since there was no genuine issue of material fact, the trial court properly granted CEI summary judgment.

The first assignment of error is not well taken.

■ In their second assignment of error, plaintiffs maintain the court erred in dismissing their complaint for failing to join a necessary/indispensable party, the United States Coast Guard.

Civ.R. 19(A) delineates the joinder of persons needed for adjudication, if feasible. It provides in part:

"A person who is subject to service of process shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (a) as a practical matter impair or impede his ability to protect that interest or (b) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest  * * *."

Section (B) further provides:

"If a person as described in subdivision (A)(1), (2) or (3) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the

absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder."

An "indispensable party" has been defined as:

" * * * [O]ne whose absence seriously prejudices any party to the action or prevents the court from rendering an effective judgment between the parties, or is one whose interests would be adversely affected or jeopardized by the judgment between the parties to the action." *Layne v. Huffman* (1974), 43 Ohio App.2d 53, 59, 72 O.O.2d 202, 205, 333 N.E.2d 147, 151.

In the present case, we hold that the Coast Guard does not meet the requirements for a necessary party under Civ.R. 19(A). First, complete relief can be accorded among the parties without joining the Coast Guard as a party. The gravamen of the plaintiffs' complaint is that CEI failed to follow federal regulations, particularly Part 67, Title 33, C.F.R., in lighting its breakwall. CEI responded that the Coast Guard is charged with the authority to administer the U.S. Aids to Navigation System under Section 62.1(a), Title 33, C.F.R. and, pursuant to that authority, directed CEI to change the breakwall light to green. CEI relied upon the authority of the Coast Guard in so doing. Its reliance on that authority and directive constitutes a complete defense to plaintiffs' allegations of negligence and thus allows CEI complete relief without joinder of the Coast Guard.

The plaintiffs, on the other hand, are free to pursue a separate cause of action against the Coast Guard. We note their present claim concerned only the purported negligence of CEI, not that of the Coast Guard. Therefore, we conclude complete relief is available to the parties without joinder.

The second prong of Civ.R. 19(A) also has not been met. The Coast Guard suffers no risk of prejudice if not joined. It has no interest in the outcome of the present negligence action against CEI. Moreover, CEI would not be subject to double or inconsistent obligations if the Coast Guard were not joined. CEI can put on a successful defense without joinder of the Coast Guard as a party.

Since we conclude the Coast Guard does not constitute a necessary party, any further analysis on whether it is an indispensable party under Civ.R. 19(B) is not warranted.

If the court did, in fact, dismiss plaintiffs' complaint on the basis of failure to join an indispensable party, it was error. We find, however, that such error would be harmless since the court properly granted summary judgment for CEI.

■ An appellate court will not reverse a correct judgment merely because the trial court assigned erroneous reasons as the basis of the judgment. *Agricultural Ins. Co. v. Constantine* (1944), 144 Ohio St. 275, 284, 29 O.O. 426, 430, 58 N.E.2d 658, 663. For this reason, if the trial court's dismissal of plaintiffs' complaint was based on Civ.R. 19, the error was harmless.

The second assignment of error is not well taken, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

James D. Sweeney, J., concurs.

Harper, J., dissents.

Harper, Judge, dissenting.

I respectfully dissent from the majority's opinion and would reverse the trial court's ruling and remand this action based upon the majority's misinterpretation of Civ.R. 12(B), *State ex rel. Baran v. Fuerst* (1990), 55 Ohio St.3d 94, 563 N.E.2d 713, and *State ex rel. Scanlon v. Deters* (1989), 45 Ohio St.3d 376, 544 N.E.2d 680. Specifically, a review of the record reveals the assumptions that the trial court converted CEI's motion to dismiss into one for summary judgment and then granted it are unsupported assumptions.

CEI's motion to dismiss was based on three arguments: It breached no duty to appellants as it merely complied with United States Coast Guard directives; the Coast Guard was a necessary or indispensable party; and the state court lacked subject matter jurisdiction. Civ.R. 12(B) provides in relevant part:

" * * * the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter, (2) lack of jurisdiction over the person, * * * (6) failure to state a claim upon which relief can be granted, (7) failure to join a party under Rule 19 or Rule 19.1. * * * When a motion to dismiss *for failure to state a claim upon which relief can be granted* presents matters outside the pleading * * *, the motion shall be treated as a motion for summary judgment and disposed of as provided in Rule 56. * * * " (Emphasis added.)

The conversion of a motion to dismiss into a motion for summary judgment is expressly limited to Civ.R. 12(B)(6) motions. Conversion does not lie where either a Civ.R. 12(B)(1) or (7) motion is filed by a party. The mere fact that the moving party attaches affidavits or other evidentiary materials to these latter

motions does not warrant conversion. See *Nemazee v. Mt. Sinai Med. Ctr.* (1990), 56 Ohio St.3d 109, 564 N.E.2d 477; *Southgate Dev. Corp. v. Columbia Gas Corp.* (1976), 48 Ohio St.2d 211, 2 O.O.3d 393, 358 N.E.2d 526 (a trial court may consider materials beyond the allegations of a complaint which are pertinent to the determination of whether it has subject matter jurisdiction without conversion); *Cross v. Gerstenslager Co.* (1989), 63 Ohio App.3d 827, 580 N.E.2d 466; *Sims v. Mack Trucks, Inc.* (E.D.Pa.1976), 407 F.Supp. 742 (a Civ.R. 12[b][7]-styled motion may be supported by materials extraneous to the pleadings).

The restriction placed upon a trial court's power to convert a motion to dismiss into one for summary judgment is easily explained by focusing on the effect of the granting of a motion to dismiss versus that of a summary judgment. If a trial court finds that it lacks jurisdiction to hear the case, the granting of a motion to dismiss does not operate to preclude the opposing party from refiling a cause of action. If a trial court grants a summary judgment motion, the trial court rules on the merits. The granting of either a Civ.R. 12(B)(1) or (7) motion to dismiss is not on the merits; a trial court has no right to adjudicate the merits of the claim via these motions. See *Kinney v. Dept. of Adm. Serv.* (1986), 30 Ohio App.3d 123, 30 OBR 240, 507 N.E.2d 402; *Ricci v. State Bd. of Law Examiners* (C.A. 3, 1978), 569 F.2d 782. Therefore, when a motion to dismiss is based on more than one ground, if the court must dismiss a case for lack of subject matter jurisdiction, the other grounds become moot and the trial court does not review the merits of the case. See *Michigan State Emp. Assn. v. Marlan* (S.D.Mich. 1984), 608 F.Supp. 85.

A review of the record here reveals that the majority errs in concluding that the trial court converted CEI's motion to dismiss into one for summary judgment simply because CEI attached Coast Guard letters to its motion to dismiss. CEI argued its motion based on, first, jurisdictional grounds. The fact that materials were attached to the motion does not warrant automatic conversion. The majority inappropriately leaps over this issue by jumping into the conclusion that the trial court converted the motion. Inherent in the majority's analysis is the finding that the trial court must have determined that it had jurisdiction to hear the case, since if the trial court did not have jurisdiction, it could not have ruled on a motion for summary judgment. I emphatically, however, point out that the trial court made no reference to its finding that it possessed jurisdiction to hear this case.

The majority states:

"Thus, although the trial court's judgment entry indicated it granted CEI's motion to dismiss, we conclude the court actually granted summary judgment. In *State ex rel. Baran v. Fuerst* (1990), 55 Ohio St.3d 94, 563 N.E.2d 713, the Supreme Court stated that '[t]he fact that [a court] had before it matters outside

the pleadings suggests that it actually granted a Civ.R. 56 motion for summary judgment, rather than dismissed a complaint pursuant to Civ.R. 12(B)(6).' *Id.* at 97, 563 N.E.2d at 716."

In *Baran,* the Supreme Court of Ohio found that this court intended to convert a Civ.R. 12(B)(6) motion to dismiss into a motion for summary judgment. The dismissal entry stated:

" 'Relator does not dispute the accuracy of respondent's assertion that relator pled guilty to a crime which occurred on November 5, 1987 * * *.' " *Id.* at 97, 563 N.E.2d at 716.

The entry referred to a matter outside the pleadings. *Id.*

The Supreme Court of Ohio likewise found that the Court of Appeals for Hamilton County treated a motion to dismiss as one for summary judgment in *Scanlon.* The relator's complaint therein was dismissed *sua sponte* on the ground that Crim.R. 16 provided an adequate remedy at law. *Id.* The Crim.R. 16 issue was raised outside the pleadings as pointed out by Justice Wright in a dissent. *Id.,* 45 Ohio St.3d at 380, 544 N.E.2d at 685.

In the instant case, the trial court's journal entry simply stated that CEI's motion to dismiss was granted. There were no references to matters outside the pleadings as found in *Baran* and *Scanlon,* a distinguishing factor. The majority's conclusion that the trial court converted the motion to dismiss into a motion for summary judgment based on the presence of "matters outside the pleadings" has no foundation. The trial court had those matters in its possession, but it is error to infer that the trial court considered them in its ruling in the absence of any reference to matters outside the pleadings. In conclusion, there is no evidence to support either a conversion or the granting of summary judgment.

The majority's ill-found conclusion has serious ramifications as evidenced by the disposition of appellants' second assignment of error. The majority further admits that it may have doubts when it concludes:

"*If the court did, in fact, dismiss plaintiffs' complaint* on the basis of failure to join an indispensable party, it was error. We find, however, that such error would be harmless since the court properly granted summary judgment for CEI." (Emphasis added.)

I am mystified by this conclusion in two respects. First, the issue of whether the trial court granted a motion to dismiss or a motion for summary judgment should not be decided with any doubt remaining. Second, if the court did in fact dismiss the complaint, it would not then rule on a motion for summary judgment. It is, therefore, illogical to find the trial court properly granted summary judgment if in fact it did grant the motion to dismiss.

As already stated, I object to the finding that the trial court did anything but grant CEI's motion to dismiss without a conversion. Therefore, the majority's review of the "motion for summary judgment ruling" is premature and the trial court's dismissal was not harmless error. I thus conclude that the trial court prejudicially dismissed this action.