[Cite as *Loper v. Help Me Grow of Cuyahoga County*, 2018-Ohio-2401.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 106152**

**LATASHA LOPER**

PLAINTIFF-APPELLANT

vs.

**HELP ME GROW OF CUYAHOGA COUNTY**

DEFENDANT-APPELLEE

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-16-871832

**BEFORE:** Kilbane, P.J., E.T. Gallagher, J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** June 21, 2018

**APPELLANT**

Latasha Loper, pro se
P.O. Box 603425
Cleveland, Ohio 44103


**ATTORNEYS FOR APPELLEE**

Robert Triozzi
Cuyahoga County Director of Law
Victor Manolache
Kelly Espy
Robin M. Wilson
Assistant Directors of Law
2079 East 9th Street - 7th Floor
Cleveland, Ohio 44115

MARY EILEEN KILBANE, P.J.:

{¶1}    Plaintiff-appellant, Latasha Loper ("Loper"), brings this pro se appeal from the trial court's order granting summary judgment to defendant-appellee, Help Me Grow of Cuyahoga County ("HMG").   For the reasons set forth below, we affirm.

{¶2}    In November 2016, Loper filed a pro se complaint, alleging HMG had wrongfully denied early intervention services to her two minor children, P.L. and P.B.   Loper claims both P.L. and P.B. have developmental delays.   Loper further alleges HMG discriminated against her children because they are African-American.   In her complaint, Loper sought $2,000,000 in damages, as well as punitive damages, and "removal of staff that did not comply with [HMG's] mission, vision, and core values."

{¶3}    In January 2017, HMG moved to dismiss Loper's complaint pursuant to Ohio Civ.R. 12(B)(1), arguing the trial court did not have subject matter jurisdiction because Loper had failed to exhaust available administrative remedies before filing her complaint.   Specifically, HMG argued that Loper failed to pursue a due process hearing before the Ohio Department of Developmental Disabilities ("DODD") as required under Ohio Adm.Code 3701-8-10.   In support of its motion to dismiss, HMG attached the affidavit of its director, Karen Mitzner ("Mitzner").

{¶4}    Mitzner averred the following.   On December 2, 2014, HMG received an initial referral for P.L., from a child find specialist at MetroHealth Medical Center.   HMG attempted to contact Loper via telephone and written correspondence in order to discuss the referral.   On December 13, 2014, HMG exited P.L.'s referral from HMG's intake system because HMG had not yet received a response from Loper.

**{¶5}** On March 25, 2015, Loper visited the HMG office and met with a service coordinator supervisor regarding her concerns about P.L. The service coordinator supervisor submitted a second referral for P.L. In April 2015, an HMG service coordinator met with Loper and completed the intake process for P.L. Loper and P.L. then met with a developmental specialist from the Cuyahoga County Board of Developmental Disabilities ("CCBDD"). The developmental specialist evaluated P.L. using the Battelle Developmental Inventory ("BDI"), but did not identify a developmental delay. However, after further discussion with Loper, the developmental specialist determined "through her informed clinical opinion" and based upon all information available to her at that time, that P.L. was in fact eligible for early intervention services.

**{¶6}** According to Mitzner, Loper expressed concern that P.L. was determined to be eligible for services based upon the developmental specialist's clinical opinion rather than the BDI. In response, the HMG service coordinator advised Loper she could make another referral if she wanted to move forward with further evaluation or services for P.L. or P.B.

**{¶7}** In July 2015, Loper made a third referral for P.L. and a first referral for P.B. HMG attempted to contact Loper by telephone and text message to schedule intake visits for P.L. and P.B. HMG conducted an intake visit with both P.L. and P.B. in late September 2015. In November 2015, CCBDD evaluated both P.L. and P.B. using the BDI, finding both children ineligible for services.

**{¶8}** On January 20, 2016, Loper made a fourth referral for P.L. to HMG. Mitzner states that HMG attempted to contact Loper, but received no response and exited the fourth referral from its system.

**{¶9}** Notably, Mitzner's affidavit did not discuss whether Loper sought a due process hearing challenging this determination.

**{¶10}** Three days after HMG filed its motion to dismiss, Loper filed a response arguing "[t]he Ohio [DODD] * * * has no jurisdiction in the matter of discrimination, a civil wrong." Loper did not dispute that she did not file an administrative complaint requesting a due process hearing. Five months after HMG filed its motion, the trial court issued the following journal entry:

> A review of [HMG's] motion to dismiss indicates that [its] argument for dismissal is based on the affirmative defense of failure to exhaust administrative remedies. Because affirmative defenses typically require reference to materials outside the complaint, they are not amenable to * * * disposition by means of a Civ.R. 12(B)(6) motion to dismiss. *See State ex rel. Freeman v. Morris*, 62 Ohio St.3d 107, 109, 579 N.E.2d 702 (1991). As [HMG] has presented matters outside of the pleadings as enumerated by Civ.R. 56, and in accordance with Ohio Civ.R. 12(B), [HMG's] motion to dismiss is hereby converted to a motion for summary judgment. [Loper] is hereby granted 14 days from the date of this order to file an opposition to [HMG's] motion, along with accompanying evidentiary materials made pertinent to such motion by Civ.R. 56.

**{¶11}** The record reflects that Loper did not file an amended brief in opposition or submit any evidentiary materials in the 14-day window provided by the trial court. Exactly 15 days after the trial court issued this entry, it granted summary judgment in favor of HMG and dismissed Loper's complaint. The trial court found that HMG "is entitled to judgment as a matter of law as [Loper] failed to exhaust her administrative remedies."

**{¶12}** It is from this order that Loper appeals, raising the following three assignments of error for review:

### Assignment of Error One

The court erred in the decision of no genuine issue of material fact according to the purpose of [Civ.R. 12(B)(6).]

### Assignment of Error Two

The court erred in the consideration of all the evidence according to [R.C. 2743.05].

### Assignment of Error Three

The court erred in the decision to converted motion from motion to dismiss summary [judgment] and court cost.

**{¶13}** As an initial matter, we note that HMG asserts for the first time on appeal that Ohio law prohibits Loper from maintaining this pro se action on behalf of her children. R.C. 4705.01 provides, in relevant part, that

> [n]o person shall be permitted to practice as an attorney and counselor at law, or to commence * * * any action * * * in which the person is not a party concerned * * * unless the person has been admitted to the bar by order of the supreme court in compliance with its prescribed and published rules.

Moreover, "[t]he common law does not permit parents to appear pro se on behalf of their minor children in civil cases." *In re C.S.*, 115 Ohio St.3d 267, 2007-Ohio-4919, 874 N.E.2d 1177, ¶ 91.

**{¶14}** The United States Supreme Court has explained that the Individuals with Disabilities in Education Act ("IDEA") affords parents independent, enforceable rights. *Winkelman v. Parma City School Dist.*, 550 U.S. 516, 533, 127 S.Ct. 1994, 167 L.Ed.2d 904 (2007). As a result, the U.S. Supreme Court held that parents of children covered by the IDEA are entitled to prosecute IDEA claims pro se on their own behalf. *Id*. at 535.

{¶15} Here, Loper's claims relate to HMG's determination that her minor children were ineligible for early intervention services under Part C of the IDEA. In *Winkelman*, the U.S. Supreme Court specifically considered claims under Part B of the IDEA, but did not distinguish those rights that specifically belonged to parents versus their children under the IDEA. *Id*. at 532. ("[The IDEA's] procedural and reimbursement related rights are intertwined with the substantive adequacy of the education provided to a child, * * * and it is difficult to disentangle the provisions in order to conclude that some rights adhere to both parent and child while others do not.").

{¶16} Accordingly, in light of the U.S. Supreme Court's holding in *Winkelman*, we find that Loper is able to maintain her own claims pro se related to her daughters' eligibility for early intervention services under the IDEA.

<u>Conversion of HMG's Motion to Dismiss
into a Motion for Summary Judgment</u>

{¶17} In the first assignment of error, Loper argues the trial court erred in determining there were no genuine issues of material fact in a motion to dismiss. In the third assignment of error, Loper contends the trial court erred in converting HMG's motion to dismiss into a summary judgment motion.

{¶18} As discussed above, HMG attached the Mitzner affidavit in support of its motion to dismiss. Although HMG titled its motion as a Civ.R. 12(B)(1) motion, it is clear that the trial court properly construed it as a motion for failure to state a claim under Civ.R. 12(B)(6), because HMG asserted an affirmative defense _ Loper's failure to exhaust administrative remedies. The Ohio Supreme Court has held that failure to exhaust administrative remedies is not a jurisdictional defect, but rather an affirmative defense that must be timely asserted or is waived. *Jones v. Chagrin Falls*, 77 Ohio St.3d 456, 459, 1997-Ohio-253, 674 N.E.2d 1388.

**{¶19}** Ohio Civ.R. 12(B) provides that when a motion to dismiss for failure to state a claim for relief contains matters outside the pleadings, the motion may be converted into a motion for summary judgment provided all parties are given reasonable opportunity to present all materials pertinent to such a motion. *Sciko v. Cleveland Elec. Illum. Co.*, 83 Ohio App.3d 660, 663, 615 N.E.2d 674 (8th Dist.1992). "'The term "reasonable opportunity" in [Fed.R.Civ.P.] 12(b) embraces the requirement that the court give some notice to all parties that it is treating the 12(b)(6) motion as one for summary judgment.'" *Pollock v. Kanter*, 68 Ohio App.3d 673, 678, 589 N.E.2d 443 (8th Dist.1990), quoting *Davis v. Zahradnick*, 600 F.2d 458, 460 (4th Cir.1979) (discussing analogous Fed.R.Civ.P. 12(b)).

**{¶20}** Here, the trial court issued an entry explaining it was converting the motion to dismiss into a motion for summary judgment. The trial court granted Loper 14 days in which to respond to HMG's motion and submit any "evidentiary materials made pertinent to such motion by Civ.R. 56." The Ohio Supreme Court has held that "[a] court must notify all parties that it has converted a motion to dismiss for failure to state a claim into a motion for summary judgment 'at least fourteen days before the time fixed for hearing.'" *Petrey v. Simon*, 4 Ohio St.3d 154, 154, 447 N.E.2d 1285 (1983) (quoting former Ohio Civ.R. 56(C)).

**{¶21}** Based upon the foregoing, we find the trial court did not err in converting HMG's motion to dismiss, which it properly construed as a Civ.R. 12(B)(6) motion for failure to state a claim, into a motion for summary judgment. The trial court gave the parties reasonable notice of the conversion and provided Loper an opportunity to present any competing evidence.

<u>Summary Judgment Standard</u>

**{¶22}** Having determined the trial court did not err in converting HMG's motion to dismiss into a motion for summary judgment, we must next consider whether summary judgment was properly granted to HMG.

**{¶23}** We review a trial court's decision to grant summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 1996-Ohio-336, 671 N.E.2d 241. In conducting a de novo review, "we afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate." *Kestranek v. Crosby*, 8th Dist. Cuyahoga No. 93163, 2010-Ohio-1208, ¶ 14.

**{¶24}** Under Civ.R. 56(C), summary judgment is properly granted when (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his or her favor. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1976).

**{¶25}** If the moving party fails to satisfy this initial burden, the summary judgment motion must be denied. *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 1996-Ohio-107, 662 N.E.2d 264. If the moving party satisfies its burden, the nonmoving party has a reciprocal burden as outlined in Civ.R. 56(E).

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

*Id.*, quoting Civ.R. 56(E).

<u>Failure to Exhaust Administrative Remedies</u>

**{¶26}** As discussed above, the trial court found HMG was entitled to summary judgment because Loper "failed to exhaust her administrative remedies." HMG argues that Ohio Adm.Code 3701-8-10 requires a parent who wishes to challenge the provision of early intervention services to his or her child to pursue a due process hearing before seeking judicial relief.

**{¶27}** In *Schneider v. Cuyahoga Cty. Bd. of Cty. Commrs.*, 2017-Ohio-1278, 88 N.E.3d 567 (8th Dist.), this court explained:

> It is a "long-settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50-51, 58 S.Ct. 459, 82 L.Ed. 638 (1938). Thus, a "party must exhaust the available avenues of administrative relief through administrative appeal" before seeking separate judicial intervention. *Noernberg v. Brook Park*, 63 Ohio St.2d 26, 29, 406 N.E.2d 1095 (1980). "Exhaustion is generally required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review." *Weinberger v. Salfi*, 422 U.S. 749, 765, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975).

*Id*. at ¶ 20.

<u>The Individuals with Disabilities Education Act</u>

**{¶28}** As an initial matter, we note that the DODD is designated as the lead agency to implement Ohio's early intervention services in accordance with Part C of the IDEA.[1] R.C. 5123.02(F). Ohio's IDEA Part C program is named "Help Me Grow." R.C. 3706.61; Ohio Adm.Code 3701-8-07.

**{¶29}** The purpose behind Part C of the IDEA and Ohio's Help Me Grow program is "to enhance the development of infants and toddlers with disabilities, to minimize their potential for developmental delay, and to recognize the significant brain development that occurs during a child's first 3 years of life." *W.R. v. Ohio Dept. of Health*, N.D.Ohio No. 1:14 CV 02075, 2015 U.S. Dist. LEXIS 114129, at *2 (Aug. 27, 2015), quoting 20 U.S.C. 1431. "The more widely known IDEA Part B provides services for children with disabilities who are ages 3-21, primarily while the child is in school." *Id.*, citing 20 U.S.C. 1411, et seq.

**{¶30}** The United States Court of Appeals for the Sixth Circuit has explained that although Part C of the IDEA does not specifically contain an exhaustion requirement, it does not preclude exhaustion. *Ohio Health Dept.*, 651 Fed. Appx. 514, 518 (6th Cir.2016). The Sixth Circuit further explained the IDEA grants the United States Department of Education the authority to promulgate regulations necessary to ensure compliance with the IDEA. *Id.* at 518-519, citing 20 U.S.C. 1406(a).

> One such regulation is 34 C.F.R. 303.448(e), which requires that claims under "the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities" that "seek[] relief that is also available under [the IDEA Part B, 20 U.S.C. § 1415]," *are required to exhaust administrative remedies prior to filing suit in district court*. States have the option to adopt this exhaustion

---

[1] The IDEA, 20 U.S.C. 1400, et seq., ensures that children with disabilities receive needed special education services. *Fry v. Napoleon Community Schools*, _____U.S. ____, 137 S.Ct. 743, 748, 197 L.Ed.2d 46 (2017). Congress enacted the IDEA to provide funding and programming for "[s]tates, local educational agencies, and educational services agencies" to address these concerns. *W. R. v. Ohio Health Dept.*, 651 Fed.Appx. 514, 515 (6th Cir.2016), quoting 20 U.S.C. 1400(c)(6).

requirement. Ohio adopted the requirement on September 5, 2013. *See* Ohio Admin. Code § 3701-8-10(F)(3).

(Emphasis added.) *Id*. at 519.

{¶31} Specifically, Ohio Adm.Code 3701-8-10(F)(3) provides, in relevant part:

Due process hearing, if the complaint alleges that the department, early intervention contractor or service provider proposes or refuses to initiate or change the identification, evaluation, or placement of an infant or toddler or the provision of early intervention services to the infant or toddler with a disability and that infant or toddler's family, which shall include scheduling a hearing before a qualified and impartial hearing officer who will provide a written decision within forty-five days from receipt of a request for a due process hearing. The due process hearing shall be conducted in accordance with 34 C.F.R. 303.440 to 34 C.F.R. 303.448[.]

{¶32} Ohio Adm.Code 3701-8-10(F)(3) clearly prescribes an administrative remedy for claims arising out of Part C of the IDEA against the DODD and related state and county agencies. Further, Ohio Adm.Code 3701-8-10(F)(3) adopts federal regulations requiring exhaustion of administrative remedies.

{¶33} As discussed above, the Mitzner affidavit makes no mention of Loper's failure to seek a due process hearing. However, Loper does not dispute that she did not seek a due process hearing. In her response to HMG's motion, Loper argues that "[DODD] under [Ohio Adm.Code 3701-8-10(F)(3)] has no jurisdiction in the matter of discrimination, a civil wrong." We disagree.

{¶34} Loper's complaint specifically challenges CCBDD's determination that her daughters were ineligible for early intervention services, and HMG's failure to provide services. Under the plain language of Ohio Adm.Code 3701-8-10(F)(3), Loper was required to request a due process hearing before filing her complaint challenging HMG's administration of early intervention services to her children.

**{¶35}** Based upon the foregoing, we find that the trial court did not err in granting summary judgment to HMG because Loper did not dispute her failure to exhaust required administrative remedies before filing her complaint.

**{¶36}** Accordingly, the first and third assignments of error are overruled.

Evidence

**{¶37}** In the second assignment of error, Loper, relying on R.C. 2743.05, argues the trial court erred because it did not obtain and review her evidence.

**{¶38}** R.C. 2743.05 bestows upon the Ohio Court of Claims "the same powers to subpoena witnesses, require production of evidence, and punish for contempt as the court of common pleas." As discussed above, Loper filed her complaint in the common pleas court. Therefore, R.C. 2743.05 is inapplicable to the present matter.

**{¶39}** Loper argues the trial court erred in dismissing her complaint without first obtaining evidence from her. This argument is unpersuasive. Under Civ.R. 56(E), Loper carried the burden of demonstrating a genuine issue of material fact for trial in responding to HMG's motion. As discussed above, the trial court granted Loper 14 days to file an opposition to HMG's motion, along with any accompanying evidentiary materials. The record reflects that Loper did not respond.

**{¶40}** Accordingly, the second assignment of error is overruled.

**{¶41}** Despite our resolution of Loper's assigned errors, we are compelled to comment that we are troubled by the breakdown in communication between HMG and Loper that is evident from the record. Loper's advocacy for her children is admirable. We find it unfortunate that she believes she and her children were unfairly treated by HMG, an organization created to provide support and education to families with young children.

**{¶42}** Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY EILEEN KILBANE, PRESIDING JUDGE

EILEEN T. GALLAGHER, J., and
FRANK D. CELEBREZZE, JR., J., CONCUR