[Cite as *Hersh v. Grumer*, 2021-Ohio-2582.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

AKIVA HERSH,                                                 :

    Plaintiff-Appellant,                        :

                            No. 109430

    v.                                                      :

RABBI YISRAEL GRUMER, ET AL.,          :

    Defendants-Appellees.                       :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** July 29, 2021

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-19-918097

---

### *Appearances:*

Triscaro & Associates, Ltd., and Joseph J. Triscaro, *for appellant.*

Gallagher Sharp, L.L.P., and Markus E. Apelis, *for appellees* Rabbi Yisrael Grumer, Congregation Shomre Shabbos, Rabbi Yitzchok Margareten, Congregation Green Road Synagogue, Rabbi Binyamin Blau, Congregation Chabad House of Cleveland, Rabbi Sholom Ber Chaikin, Congregation Zichron Chaim, Rabbi Alexander Charlop, Rabbi Moshe Garfunkel, Congregation Jewish Learning Connection Inc., and Rabbi Ephraim Nisenbaum.

Gallagher Sharp, L.L.P., Mark A. Greer, and Liz R. Phillips, *for appellees* Rabbi Mordechai Mendelson and Congregation Zemach Zedek of Cleveland Heights.

Molly Steiber Harbaugh, *for appellees* Rabbi Raphael Davidovich and The Heights Jewish Center, and The Beth Hamidrosh Hagodol Ohave Emuno Anshe Grondo Congretation.

Ulmer & Berne L.L.P., Robert E. Chudakoff, Joshua A. Klarfeld, and Kenneth A. Zirm, *for appellees* Rabbi Naphtali Burnstein, Rabbi Aharon Lebovics, and Young Israel of Greater Cleveland.

Zagrans Law Firm and Eric H. Zagrans; The Schwartz Law Firm and Fred P. Schwartz, *for appellees* Rabbi Avraham Bensoussan, Beis Eliyahu Synagogue/Torah Center, Congregation Bais Avrohom, Rabbi Nissim Abrin, Aleksander Shul, Rabbi Shneur Zalman Denciger, Rabbi Sholom Ber Chaikin, Chabad House of Cleveland, Rabbi Moshe Einstadter, Congregation Torah Utefilah, Rabbi Boruch Hirschfeld, Rabbi Yehuda Cahan, and Rabbi Shmuel Spitz.

McNeal Schick Archibald & Biro Co., L.P.A., and Marilyn J. Singer; The Schwartz Law Firm and Fred P. Schwartz; Zagrans Law Firm and Eric H. Zagrans, *for appellees* Rabbi Yehuda Blum and Congregation K'Hal Yereim.

Hannah Campbell & Powell, L.L.P., Kenneth A. Calderone and Frank G. Mazgaj, *for appellees* Rabbi Ari Spiegler and Beachwood Kehilla.

Reminger Co., L.P.A., and Brian D. Sullivan, *for appellees* Rabbi Dovid Aaron Gross and Congregation Beis Doniel.

LISA B. FORBES, J.:

{¶ 1} Akiva Hersh ("Hersh") appeals the trial court's order granting the defendants', who are individuals and religious entities in the Orthodox Jewish community of the Cleveland area ("the Defendants"), motions to dismiss and motions for judgment on the pleadings in this defamation-based action. Upon

review of the facts and pertinent law, we reverse the trial court's judgment and remand for proceedings consistent with this judgment.

## I. Facts and Procedural History

**{¶ 2}** According to Hersh's complaint, in 2015, he moved to the Cleveland area and began working within the Orthodox Jewish community, specifically "for the son of Rabbi Mordechai Gifter." Hersh "assisted Rabbi Zalman Gifter to oppose certain wrongdoings within the Cleveland Orthodox Jewish community, and as a consequence thereof received threats by certain influential members of the community." On August 13, 2018, the Defendants "read an announcement concerning Hersh before all of their respective congregations, and a written form of such announcement was also posted at each congregation." This announcement ("the Letter") states as follow:

> As Rabbonim in the community, we have a responsibility to protect all our members.
>
> We therefore must share with you that we have recently learned that [Hersh] is alleged to have engaged in inappropriate behavior with young men under the age of thirteen.
>
> We have also learned that police reports have been filed detailing his activities.
>
> We understand that he is attempting to create a Boy Scout troop. We are concerned that this is a potentially unhealthy and dangerous situation.
>
> We alert you to our concerns and warn you not to let young children be in his care.

**{¶ 3}** On August 29, 2018, "the Cleveland Jewish News published a news article titled 'Orthodox, Modern Orthodox synagogues warn members of suspicious

man.'"  Also in August 2018, other "articles" were posted online on various websites with headlines including, "Cleveland Rabbis:  Don't Give Akiva Meir Hersh Access to Children" and "Akiva Hersh of Cleveland a Sexual Predator?"

{¶ 4}  On July 11, 2019, Hersh filed a complaint against the Defendants alleging defamation per se, defamation per quod, false light, and "intentional/negligent infliction of emotional distress."  According to Hersh's complaint, the Defendants wrote the Letter "to ruin Hersh's reputation in the community * * * without any reasonable basis for believing [the statements] to be true."  On December 27, 2019, the trial court granted the Defendants' motions to dismiss and motions for judgment on the pleadings.  Hersh appeals and presents three assignments of error for our review, arguing that the trial court erred in granting the Defendants' motions:

1. The trial court erred in granting Defendants' motions to dismiss and motions for judgment on the pleadings concerning Plaintiff's defamation claims.

2. The trial court erred in granting Defendants' motions to dismiss and motions for judgment on the pleadings concerning Plaintiff's false light claim.

3. The trial court erred in granting Defendants' motions to dismiss and motions for judgment on the pleadings concerning Plaintiff's intentional infliction of emotional distress claim.

## II. Standard of Review

{¶ 5}  We review rulings on Civ.R. 12(B)(6) motions to dismiss under a de novo standard.  "A motion to dismiss for failure to state a claim upon which relief can be granted is procedural and tests the sufficiency of the complaint.  * * * Under

a de novo analysis, we must accept all factual allegations of the complaint as true and all reasonable inferences must be drawn in favor of the nonmoving party." *NorthPoint Props. v. Petticord*, 179 Ohio App.3d 342, 2008-Ohio-5996, 901 N.E.2d 869, ¶ 11 (8th Dist.). "For a trial court to grant a motion to dismiss for failure to state a claim upon which relief can be granted, it must appear 'beyond doubt from the complaint that the plaintiff can prove no set of facts entitling her to relief.'" *Graham v. Lakewood*, 8th Dist. Cuyahoga No. 106094, 2018-Ohio-1850, ¶ 47, quoting *Grey v. Walgreen Co.*, 197 Ohio App.3d 418, 2018-Ohio-6167, 967 N.E.2d 1249, ¶ 3 (8th Dist.).

{¶ 6} We analyze a Civ.R. 12(C) motion for judgment on the pleadings "under the same principles that this court would apply in analyzing a motion to dismiss pursuant to Civ.R. 12(B)(6)." *Jordan v. Giant Eagle Supermarket*, 8th Dist. Cuyahoga No. 109304, 2020-Ohio-5622, ¶ 21.

{¶ 7} Prior to our analysis, however, we turn to the trial court's 34-page decision granting the Defendants' motions, which focuses on "multiple, independent arguments for dismissing the case at this stage" set forth by the Defendants. The trial court's analysis of these defenses is based on an improper hybrid standard of review, which is not applicable to motions under Civ.R. 12(B)(6) and (C). Of particular note is that the trial court improperly considered two police reports that were attached to some of the Defendants' answers and motions.

{¶ 8} We find that the trial court erred by considering these police reports for three reasons: 1) they are not relevant to whether Hersh stated a claim for

defamation; 2) they were not properly incorporated into the pleadings; and 3) the trial court did not properly convert the Defendants' motions to dismiss into motions for summary judgment.

{¶ 9} As to relevancy, the police reports are mentioned only in paragraph three of the Letter. Hersh is not alleging that paragraph three of the Letter is defamatory, and he is not disputing that the police reports were filed. There is no need to consider the police reports to determine whether his defamation claims survive the Defendants' motions to dismiss and motions for judgment on the pleadings.

{¶ 10} Though the police reports were attached to some of the Defendants' answers, they were not properly incorporated into the pleadings. We first define "pleadings." Pursuant to "Civ.R. 7(A), only complaints, answers and replies constitute pleadings." *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.*, 65 Ohio St.3d 545, 549, 605 N.E.2d 378 (1992). Under Civ.R. 10(C), a "written instrument" attached to a pleading becomes part of the pleading. However, "not every document attached to a pleading constitutes a Civ.R. 10(C) written instrument." *State ex rel. Leneghan v. Husted*, 154 Ohio St.3d 60, 2018-Ohio-3361, 110 N.E.3d 1275, ¶ 17. Rather, a written instrument "has primarily been interpreted to include documents that evidence the parties' rights and obligations, such as negotiable instruments, 'insurance policies, leases, deeds, promissory notes, and contracts.'" (Citation omitted.) *Id.* The police reports are not "written instruments" that were incorporated into the pleadings.

{¶ 11} Further, the trial court did not follow the procedure outlined in Civ.R. 12(B) to consider the police reports that were attached to some of the Defendants' motions to dismiss and motions for judgment on the pleadings. Civ.R. 12(B) provides that "[w]hen a motion to dismiss for failure to state a claim upon which relief can be granted presents matters outside the pleading and such matters are not excluded by the court, the motion shall be treated as a motion for summary judgment and disposed of as provided in Rule 56." In other words, "[d]ocuments that are attached to a motion to dismiss may not be considered, unless [the trial] court properly converts the matter to a motion for summary judgment pursuant to Civ.R. 56." *State ex rel. Rice v. Wolaver*, 2d Dist. Greene No. 2015 CA 0031, 2016-Ohio-320, ¶ 5.

{¶ 12} Civ.R. 12(B) limits consideration to "only such matters outside the pleadings as are specifically enumerated in Rule 56." Pursuant to Civ.R. 56(C), a trial court may consider the following materials when ruling on a summary judgment motion: "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact * * *. No evidence or stipulation may be considered except as stated in this rule." The police reports, standing alone, are not proper Civ.R. 56 evidence. *See Muncy v. Am. Select Ins. Co.*, 129 Ohio App.3d 1, 6, 716 N.E.2d 1171 (10th Dist.1998) ("a police report may properly be considered on summary judgment if it is accompanied by an appropriate affidavit"); *Laughner v. Laughner*, 8th Dist. Cuyahoga No. 56491, 1990 Ohio App. LEXIS 151 (Jan. 25, 1990).

{¶ 13} Additionally, Civ.R. 12(B) requires that the parties be given reasonable opportunity to present all materials made pertinent under Civ.R. 56 before the trial court converts the motions to dismiss into motions for summary judgment. The parties were given no such opportunity in the case at hand.

{¶ 14} As for the defendants' motions filed pursuant to Civ.R. 12(C), "this court can find no authority to support the beliefs of [the dissent] that a motion made pursuant to Civ.R. 12(C) can be converted to a motion for summary judgment. This theory is mistaken. The language of Civ.R. 12(C) does not provide for conversion." *Piersant v. Bryngelson*, 61 Ohio App.3d 359, 363, 572 N.E.2d 800 (8th Dist.1989).

{¶ 15} Having established the proper standard of review for motions to dismiss and motions for judgment on the pleadings, we analyze the Defendants' arguments based on the assumption that all factual allegations of the complaint are true.

### III. Law and Analysis

#### A. Defamation

{¶ 16} The elements of a defamation claim are: "(1) that a false statement of fact was made; (2) that the statement was defamatory; (3) that the statement was published; (4) that the plaintiff suffered injury as a proximate result of the publication; and (5) that the defendant acted with the requisite degree of fault in publishing the statement." *Pollock v. Rashid*, 117 Ohio App.3d 361, 368, 690 N.E.2d 903 (1st Dist.1996).

> Defamation per se occurs when material is defamatory on its face; defamation per quod occurs when material is defamatory through

interpretation or innuendo. Written matter is [defamatory] per se if, on its face, it reflects upon a person's character in a manner that will cause him to be ridiculed, hated, or held in contempt; or in a manner that will injure him in his trade or profession. When a writing is not ambiguous, the question of whether it is [defamatory] per se is for the court. A writing that accuses a person of committing a crime is [defamatory] per se.

(Emphasis and citations omitted.) *Gosden v. Louis,* 116 Ohio App.3d 195, 206-207, 687 N.E.2d 481 (9th Dist.1996).

{¶ 17} Hersh's complaint alleges that the following statements from the Letter are defamatory:

We therefore must share with you that we have recently learned that [Hersh] is alleged to have engaged in inappropriate behavior with young men under the age of thirteen.

We understand that he is attempting to create a Boy Scout troop. We are concerned that this is a potentially unhealthy and dangerous situation.

We alert you to our concerns and warn you not to let young children be in his care.

{¶ 18} Hersh also alleges that these statements "at the very least contained innuendo that Hersh engaged in sexual and/or inappropriate relations with boys under the age of thirteen, and that Hersh posed a risk of harm if provided access to young children." The complaint further alleges that the statements "are false and defamatory," that they were published, that he suffered injury including "hatred, contempt, ridicule, and obloquy," as well as "loss to his reputation, shame and mortification," and that the Defendants "acted with malice, oppression, and/or fraud * * *."

**{¶ 19}** Considering these allegations in a light most favorable to Hersh, as we must when reviewing motions to dismiss for failure to state a claim and motions for judgment on the pleadings, we find that Hersh sufficiently pled causes of action for defamation. *See Wilson v. Wilson*, 2d Dist. Montgomery No. 21443, 2007-Ohio-178, ¶ 13 (the plaintiff's "claim, if proven, constituted defamation per se because the assertion of pedophilia involves a charge of moral turpitude and is an indictable offense"); *N.A.D. v. Cleveland Metro. School Dist.*, 8th Dist. Cuyahoga No. 97195, 2012-Ohio-4929, ¶ 18 ("At the motion to dismiss stage * * *, as opposed to the summary judgment stage * * *, plaintiffs are only required to have a short and plain statement of the claim showing that they are entitled to relief and our review is confined to the four corners of the complaint. *See* Civ.R. 8 and Civ.R. 12(B)(6).").

**{¶ 20}** In the case at hand, our analysis does not stop here. In their motions, the Defendants raised various defenses and arguments that the statements at issue in the Letter are not actionable defamation because they are: 1) true; 2) opinion; 3) not defamatory; 4) susceptible of an innocent construction; and 5) protected by the common-interest privilege. In its decision, the trial court improperly found in favor of the Defendants on all of these arguments.

### 1. Truth

**{¶ 21}** "[T]ruth is an absolute defense to a defamation action * * *." *Krems v. Univ. Hosps. of Cleveland*, 133 Ohio App.3d 6, 12, 726 N.E.2d 1016 (8th Dist.1999). "Whether a defamatory statement is substantially true is generally a

question of fact." *Sullins v. Raycom Media, Inc.,* 2013-Ohio-3530, 996 N.E.2d 553, ¶ 38-39 (8th Dist.).

{¶ 22} In the case at hand, the trial court determined that some of the statements in the Letter were true or substantially true. For example, the trial court stated the following in its decision: "To the extent the Letter contains statements that are material and factual in nature, the Court concludes that any factual statements are also protected as they are substantially true * * *."

{¶ 23} The truth of the statements is a matter of fact and is not properly determined at the motion to dismiss stage, unless the truth is undisputed. Here, the truth of the statements in the Letter is disputed. Under Civ.R. 12(B)(6) and (C), the trial court should have presumed that the Defendants' statements were false, because that is what Hersh alleged in his complaint.

{¶ 24} The trial court erred by granting the Defendants' motions based on truth as a defense.

### 2. Opinion

{¶ 25} We note that the trial court concluded that all three statements in the Letter that Hersh claims are defamatory are unactionable as constitutionally protected opinion. However, the trial court also found that "any factual statements * * * are substantially true." Fact and opinion are mutually exclusive, and to determine that a statement is both is error. Nonetheless, we analyze whether, on the face of the pleadings, we can determine that the statements at issue are opinions. A "totality of the circumstances test [is] to be used when determining whether a

statement is fact or opinion.  Specifically, the court should consider:  the specific language at issue, whether the statement is verifiable, the general context of the statement, and finally, the broader context in which the statement appeared."  *Vail v. Plain Dealer Publishing Co.*, 72 Ohio St.3d 279, 282, 649 N.E.2d 182 (1995).

### a. Specific Language used

{¶ 26} The specific language used bears repeating here:

> We therefore must share with you that we have recently learned that [Hersh] is alleged to have engaged in inappropriate behavior with young men under the age of thirteen.

> We understand that he is attempting to create a Boy Scout troop.  We are concerned that this is a potentially unhealthy and dangerous situation.

> We alert you to our concerns and warn you not to let young children be in his care.

### b. Verifiable

{¶ 27} It is verifiable whether the Defendants' "recently learned" of the allegations against Hersh, particularly in light of Hersh's allegation that the Defendants acted with malice in publishing the Letter.  It is also verifiable whether the Defendants "understand that [Hersh] is attempting to create a Boy Scout troop." The speakers and authors of the Letter are leaders of the religious community to which the statements were published, which adds a patina of credibility to their words.  What may be opinion within one circle becomes truth within another.

> Subjective emotions are not verifiable.  But, when the author indicates the he has "private, first-hand knowledge which substantiates the opinion he expresses, the opinion becomes as damaging as an assertion of fact."

"Liability for libel may attach when a negative characterization of a person is coupled with a clear, but false implication that the author is privy to facts about the person that are unknown to the general reader."

What would otherwise likely be a nonverifiable opinion may be considered a statement of fact due to the context of the statement and the speaker-defamer's position within a company or organization.

*Dudee v. Philpot,* 2019-Ohio-3939, 133 N.E.3d 590, ¶ 61-63, (1st Dist.), quoting *Stohlmann v. WJW TV, Inc.,* 8th Dist. Cuyahoga No. 86491, 2006-Ohio-6408 ¶ 27, *Hotchner v. Castillo-Puche,* 551 F.2d 910, 913 (2d Cir.1977), and *Wayt v. DHSC, L.L.C.,* 2017-Ohio-7734, 97 N.E.3d 903, ¶ 138 (5th Dist.)

### c. General Context

{¶ 28} Hersh alleges in the complaint that, reading the Letter as a whole as we must, either: 1) the natural and ordinary meaning of the Letter is that Hersh is a pedophile; or 2) the Letter by innuendo means that Hersh is a pedophile. In one of the motions to dismiss, the respective defendants argue that "the only one who reads any sort of sexual connotation into the letter is [Hersh]." This assertion is countered by the various online articles posted as a result of the Letter with headlines such as "Akiva Hersh of Cleveland a Sexual Predator?" As alleged in his complaint, Hersh is not the only one who reads a sexual connotation into the Letter.

### d. Broader Context

{¶ 29} We find that the trial court erred by determining that the language "attempting to create a Boy Scout troop" is "not material to the import of the letter." That statement includes assertions of verifiable facts that Hersh disputed in the allegations in his complaint. Given the totality of the Letter, it appears potentially

to be designed to raise concerns about pedophilia, particularly in light of recent widespread news coverage that the Boy Scouts of America "are covering up rampant pedophilia within their ranks." Zhao, *Boy Scouts of America Are Covering Up a 'Pedophilia Epidemic,' 350 Alleged Abusers Have Been Named in Lawsuit*, Newsweek (Aug. 7, 2019). The connotation that the words "Boy Scouts" invokes in the Letter is certainly material to Hersh's claims.

{¶ 30} Based on the pleadings, it was not proper for the trial court to conclude as a matter of law that Hersh could not prevail on either of his defamation claims based on opinion as a defense.

### 3. Not Defamatory

{¶ 31} We recognize that actionable defamation falls into one of two categories: defamation per se or defamation per quod. Hersh alleges both in his complaint based on alternate theories of recovery. *See Moore v. P.W. Publishing Co.*, 3 Ohio St.2d 183, 187-188, 209 N.E.2d 412 (1965) ("It is apparent that the validity of the plaintiff's judgment depends upon two questions. One, are the words, 'Uncle Tom,' libel per se, and two, if such words are not libel per se are the words libel per quod * * *.").

{¶ 32} The analysis of whether the statements were defamatory in nature overlaps with our analysis of the general and broader context within which the Letter was published. Although whether a statement is defamatory in nature may be determined as a matter of law, "the trial court is directed to review the statement under a totality of the circumstances. * * * [T]he statements at issue should be read

in the context of the entire article in determining whether a reader would interpret them as defamatory." *Mendise v. Plain Dealer Publishing Co.*, 69 Ohio App.3d 721, 726, 591 N.E.2d 789 (8th Dist.1990).

{¶ 33} Furthermore, it is long-standing law in Ohio that "in an action for libel the question whether the publication complained of is libelous per se is primarily for the court, and that it is error to submit to the jury the question whether the publication is libelous per se, unless its meaning is so uncertain and ambiguous as to require that the construction and meaning be submitted to a jury." *Becker v. Toulmin*, 165 Ohio St. 549, 554-555, 138 N.E.2d 391 (1956). The limited record in this case is not developed enough to determine whether the Letter is defamatory per se as a matter of law, and whether the Letter is defamatory per quod is a question for the trier of fact.

{¶ 34} The trial court erred by granting the Defendants' motions based on their defense that the statements were not defamatory.

### 4. Innocent Construction

{¶ 35} The innocent construction rule provides that "if allegedly defamatory words are susceptible to two meanings, one defamatory and one innocent, the defamatory meaning should be rejected, and the innocent meaning adopted." *Yeager v. Local Union 20, Teamsters*, 6 Ohio St.3d 369, 372, 453 N.E.2d 666 (1983). The innocent construction must be reasonable. *Murray v. Knight-Ridder, Inc.*, 7th Dist. Belmont No. 02BE45, 2004-Ohio-821.

**{¶ 36}** In the case at hand, the trial court concluded that the "words in the Letter, given their natural and obvious meaning, are reasonably interpreted to import allegations of behavior that is nonsexual and lawful, but improper under the circumstances." That conclusion is not supported by the limited record we have before us. The Letter imports allegations of "activities" that are unlawful, because the police were alerted, and "potentially unhealthy and dangerous." In the Letter, the Defendants "warn you not to let young children be in [Hersh's] care." Assuming these allegations are false, as we must when reviewing decisions made under Civ.R. 12(B)(6) and (C), there is no innocent way to construe these statements.

**{¶ 37}** The trial court erred by granting the Defendants' motions based on their defense of the innocent construction rule.

### 5. Qualified Privilege

**{¶ 38}** The trial court also erred by determining that the qualified privilege of common-interest applied.

> A qualified privilege is recognized in many cases where the publisher and the recipient have a common interest, and the communication is of a kind reasonably calculated to protect or further it. Frequently, in such cases, there is a legal, as well as a moral, obligation to speak. This is most obvious in the case of those who have entered upon or are considering business dealings with one another.

*Hahn v. Kotten*, 43 Ohio St.2d 237, 244, 331 N.E.2d 713 (1975).

**{¶ 39}** The Ohio Supreme Court has held that the qualified privilege is designed to protect publications made in good faith; if a defamatory statement is privileged, liability only attaches if actual malice is proven. *Jacobs v. Frank*, 60 Ohio St.3d 111, 114, 573 N.E.2d 609 (1991). It is premature to make a determination

regarding the requisite degree of fault at this early stage of the proceedings. Hersh alleged that the Defendants "acted with malice" and published the Letter in retaliation against him for his opposition to certain "wrongdoings within the Cleveland Orthodox Jewish community and assistance to Rabbi Zalman Gifter." We must accept these allegations as true when reviewing motions to dismiss and motions for judgment on the pleadings.

{¶ 40} In *York v. Ohio State Highway Patrol*, 60 Ohio St.3d 143, 145, 573 N.E.2d 1063 (1991), the court held that under Civ.R. 8,

> a plaintiff is not required to prove his or her case at the pleading stage. Very often, the evidence necessary for a plaintiff to prevail is not obtained until the plaintiff is able to discover materials in the defendant's possession. If the plaintiff were required to prove his or her case in the complaint, many valid claims would be dismissed because of the plaintiff's lack of access to relevant evidence. Consequently, as long as there is a set of facts, consistent with the plaintiff's complaint, which would allow the plaintiff to recover, the court may not grant a defendant's motion to dismiss.

{¶ 41} The trial court erred by applying the defense of qualified privilege to bar Hersh's defamation claims at this stage of the proceedings. Hersh's first assignment of error is sustained.

## B. False Light

{¶ 42} The Ohio Supreme Court has recognized false light as a cause of action under the invasion-of-privacy umbrella. *Welling v. Weinfeld*, 113 Ohio St.3d 464, 2007-Ohio-2451, 866 N.E.2d 1051, ¶ 61.

> In Ohio, one who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and

(b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

*Id.*

{¶ 43} Based on our analysis of Hersh's defamation claim, we conclude that Hersh's allegations, which we must accept as true at this stage of the proceedings, support a claim for false light. Hersh's complaint alleges that the Defendants made the statements in question "to almost the entire Cleveland Orthodox Jewish community," that these statements "placed [him] * * * in a false light," and that the Defendants "acted with reckless disregard to the falsity of the publicized matter * * *." Falsely accusing someone of inappropriate conduct with children, let alone being a pedophile, whether expressly or by innuendo, "would be highly offensive to a reasonable person." The court erred by granting the Defendants' motions as to Hersh's false light claim, and his second assignment of error is sustained.

## C.  Intentional Infliction of Emotional Distress

{¶ 44} In *Lombardo v. Mahoney*, 8th Dist. Cuyahoga No. 92608, 2009-Ohio-5826, ¶ 6, this court held:

> To establish a claim for intentional infliction of emotional distress, a plaintiff must prove the following elements: (1) the defendant intended to cause, or knew or should have known that his actions would result in serious emotional distress; (2) the defendant's conduct was so extreme and outrageous that it went beyond all possible bounds of decency and can be considered completely intolerable in a civilized community; (3) the defendant's actions proximately caused psychological injury to the plaintiff; and (4) the plaintiff suffered serious mental anguish of a nature no reasonable person could be expected to endure.

{¶ 45} In the instant case, Hersh alleged that Defendants, by writing and publishing the Letter, intended "to ruin [his] reputation in the community * * * without any reasonable basis for believing [the statements] to be true." He also alleged that the Defendants' conduct was intentional, was "extreme and outrageous," and caused him "severe emotional distress." As stated in our analysis of Hersh's defamation claim, falsely alleging that someone is a pedophile and making this statement with a certain degree of fault regarding the truth of the matter, is defamatory per se. Accepting all factual allegations in Hersh's complaint as true, as we must at this stage of the proceedings, we find that Hersh could prove all of the elements of intentional infliction of emotional distress. Accordingly, the trial court erred by granting Defendants' motions on this claim, and Hersh's third assignment of error is sustained.

### D. Negligent Infliction of Emotional Distress

{¶ 46} While not challenged on appeal by Hersh, we note that the trial court did not err in granting Defendants' motions to dismiss and motions for judgment on the pleadings regarding Hersh's claim for negligent infliction of emotional distress.

## IV. Conclusion

{¶ 47} The trial court erred by granting the Defendants' motions to dismiss under Civ.R. 12(B)(6) and motions for judgment on the pleadings under Civ.R. 12(C) on Hersh's claims for defamation per se, defamation per quod, false light, and intentional infliction of emotional distress. These rulings are reversed, because Hersh successfully pled these four claims.

**{¶ 48}** Judgment reversed. Case remanded to the trial court for proceedings consistent with this opinion.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry out this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

LISA B. FORBES, JUDGE

KATHLEEN ANN KEOUGH, J., CONCURS;
SEAN C. GALLAGHER, P.J., DISSENTS WITH SEPARATE OPINION

SEAN C. GALLAGHER, P.J., DISSENTING:

**{¶ 49}** Although I agree with the majority's conclusion with respect to the existence of error, I disagree with the majority's approach of limiting the standard of review to Civ.R. 12(B)(6). I, therefore, respectfully dissent.

## I. Standard of Review

**{¶ 50}** The procedural posture of this case goes beyond that standard of review for a motion to dismiss. Based on the arguments advanced by the defendants, the trial court concluded as a matter of law after considering evidence beyond the pleadings that the defendants' statements were ones of opinion and factually true or that the defendants were entitled to a qualified privilege to

disseminate the disputed statements to the public at large. As detailed below, I would find those conclusions to be legally erroneous because there are genuine issues of material fact precluding the judgment entered by the trial court.

{¶ 51} The standard of review in this case is derived from Civ.R. 56, not Civ.R. 12. On this point, the majority concludes that because the motions filed by the defendants that gave rise to the summary disposition were captioned as motions to dismiss, and because the trial court cited Civ.R. 12(B) as its foundational standard, then we are bound to solely view this case in a limited scope. Tellingly, none of the parties have asked this court to limit our review so narrowly. "It is essential for a reviewing court to ascertain the grounds upon which a judgment of a lower court is founded, the reviewing court *must examine the entire journal entry and the proceedings*." (Emphasis added.) *Joyce v. Gen. Motors Corp.*, 49 Ohio St.3d 93, 95, 551 N.E.2d 172 (1990), citing *A.B. Jac, Inc. v. Liquor Control Comm.*, 29 Ohio St.2d 139, 280 N.E. 2d 371 (1972), paragraph two of the syllabus. A court speaks through its "entire journal entry." *Id.*, citing *A.B. Jac, Inc.* at 142. In this case, the trial court's judgment entry was not based on the Civ.R. 12 standard.

{¶ 52} In *Joyce*, for example, the defendants moved for dismissal of the complaint under Civ.R. 12(B)(6), claiming that the plaintiffs failed to present any cognizable claim. *Id.* at syllabus. The trial court overruled the preliminary motion, but at trial upon a motion for directed verdict determined, after considering the evidence presented, that no cause of action existed. *Id.* The appellate court reversed, claiming that the complaint stated a claim for relief, construing the trial

court's decision under Civ.R. 12(B)(6) instead of under the summary proceedings of a directed verdict motion. *Id.* at 173. *Joyce* looked beyond the isolated statement of the trial court and considered the totality of the proceedings to conclude that the proper standard was under Civ.R. 50, the direct verdict standard, which incidentally is identical to the standard under Civ.R. 56. *Id.* As the court noted, the difference between a Rule 12(B)(6) motion and a directed verdict is procedural: the Rule 12 motion is a preliminary ruling before evidence is introduced while the directed verdict motion is "made and decided on the evidence that has been admitted." *Id.*

{¶ 53} In this case, the trial court reviewed the extraneous evidence and entered judgment as a matter of law upon all claims — a conclusion reached through Civ.R. 56. Although it is true the defendants captioned their motions as motions to dismiss, courts in Ohio generally look to the substance of the pleading or motion, not the captions. *Briggs v. Wilcox*, 2013-Ohio-1541, 991 N.E.2d 262, ¶ 37 (8th Dist.); *Engelhart v. Bluett*, 1st Dist. Hamilton No. C-160189, 2016-Ohio-7237, ¶ 12; *Auer v. Paliath*, 2d Dist. Montgomery No. 27004, 2016-Ohio-5353, ¶ 43; *Shelton v. LTC Mgt. Servs.*, 4th Dist. Highland No. 03CA10, 2004-Ohio-507, ¶ 7; *Davis v. Johnson*, 6th Dist. Lucas No. L-19-1268, 2021-Ohio-85, ¶ 25. Despite the fact that the defendants captioned their motions as ones to dismiss under Civ.R. 12, the trial court considered the evidence and rendered judgment as a matter of law. There is a stark difference between a dismissal and entering a summary judgment.

{¶ 54} A "'motion to dismiss for failure to state a claim upon which relief can be granted is procedural and tests the sufficiency of the complaint.'" *State ex rel.*

*Belle Tire Distribs. v. Indus. Comm. of Ohio*, 154 Ohio St.3d 488, 2018-Ohio-2122, 116 N.E.3d 102, ¶ 17, quoting *State ex rel. Hanson*, 65 Ohio St.3d at 548, 605 N.E.2d 378. A court may grant a Civ.R. 12(B)(6) motion to dismiss "only when the complaint, when construed in the light most favorable to the plaintiff and presuming all the factual allegations in the complaint are true, demonstrates that the plaintiff can prove no set of facts entitling him to relief." *Id.*, citing *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192, 532 N.E.2d 753 (1988). That standard is straightforward and stands in contrast to the standard of review under Civ.R. 56 in which a judgment shall be rendered if the defendants "show that there is no genuine issue as to any material fact and that the moving *party is entitled to judgment as a matter of law.*" (Emphasis added.) *Id.*; *see* majority opinion ¶ 29 (recognizing the trial court's disposition in which it was concluded that the defendants were entitled to judgment as a matter of law).

{¶ 55} Throughout this appeal, the defendants seek an affirmance of the trial court's conclusion that they are entitled to judgment as a matter of law based on the consideration of evidence outside the pleadings. *State ex rel. V Cos. v. Marshall*, 81 Ohio St.3d 467, 471, 1998-Ohio-329, 692 N.E.2d 198 (parties may not take advantage of the procedural errors they induced the court to take, and it was not reversible error for the trial court to treat the motions to dismiss as ones for summary judgment without providing the parties notice since the summary judgment was induced by the plaintiff seeking to overturn the summary disposition). The trial court unambiguously granted judgment as a matter of law in

favor of the defendants upon all claims after expressly considering the extraneous evidence. *See generally* Civ.R. 56. The trial court's judgment is the typical disposition under Civ.R. 56, highlighting the need to review the substance of the trial court's decision instead of limiting our appellate analysis solely based on the captioning of the defendants' motions. *Joyce,* 49 Ohio St.3d, 551 N.E.2d 172, at paragraph one of the syllabus. This point is further punctuated by the fact that the trial court's citations in support of its lengthy judgment entry primarily focused on cases resolving motions for summary judgment, highlighting the standard under which the court was actually operating: *Jackson v. Columbus*, 117 Ohio St.3d 328, 2008-Ohio-1041, 883 N.E.2d 1060, ¶ 11; *Cooper School of Art v. Plain Dealer Publishing Co.,* 8th Dist. Cuyahoga No. 50569, 1986 Ohio App. LEXIS 6698, at 14 (May 8, 1986); *Krems*, 133 Ohio App.3d at 10, 726 N.E.2d 1016; *Stohlmann*, 8th Dist. Cuyahoga No. 86491, 2006-Ohio-6408, at ¶ 1; *Wampler v. Higgins*, 93 Ohio St.3d 111, 113, 2001-Ohio-1293, 752 N.E.2d 962; *Sikora v. Plain Dealer Publishing Co.*, 8th Dist. Cuyahoga No. 81465, 2003-Ohio-3218, ¶ 13; *Murray v. Chagrin Valley Publishing Co.*, 2014-Ohio-5442, 25 N.E.3d 1111, ¶ 5 (8th Dist.); and *Sabino v. WOIO, L.L.C.*, 2016-Ohio-491, 56 N.E.3d 368, ¶ 1 (8th Dist.).

{¶ 56} At best, the trial court muddled the standard as between the motion to dismiss and the motion for summary judgment, but that confusion should not impact our review after consideration of the totality of the judgment entry and the proceedings. *Joyce*, 49 Ohio St.3d at 95, 551 N.E.2d 172. And although it is error to consider extraneous evidence under Civ.R. 12(B)(6), the mere fact that extraneous

evidence was submitted does not end or bind the appellate analysis. S*ee, e.g.*, *Mang Hung Wong v. CCH Dev. Corp.*, 8th Dist. Cuyahoga No. 109472, 2021-Ohio-1099, ¶ 13 (although the extraneous evidence was presented in the motion to dismiss, the trial court did not consider the evidence and therefore the standard of review was derived from Civ.R. 12(B)(6)).

{¶ 57} More important, the fact that the trial court considered the evidence outside the pleadings or acted upon a motion to dismiss under Civ.R. 12 is not the error Hersh is asking us to correct. In Hersh's assigned errors, he claims the trial court erred in granting judgment as a matter of law because, even if we construe the evidence outside the pleadings, the defendants are not entitled to truth as a defense to the defamation claims, the publication is not constitutionally protected opinion, the publication is defamatory per se and per quod, and the publication is not a privileged communication. None of those substantive conclusions can occur under Civ.R. 12(B)(6), which is solely limited to determining whether a claim was sufficiently pleaded. And this distinction has ramifications for the future of this case.

{¶ 58} The defendants universally sought a quick exit to this litigation by filing documentary evidence for the trial court's consideration under the guise of Civ.R. 12. Upon the defendants' requests, the trial court considered the evidence and granted summary judgment, and in the process made several legal and factual conclusions not addressed by the majority's limited review. The majority's approach of limiting the analysis to the motion to dismiss standard permits the defendants to

correct the procedural deficiency, recaption their motions, and attempt a second summary attack on the proceeding, advancing the same arguments squarely before this court. The trial court has already ruled on those issues in their favor, so it defies credulity to believe a different result will occur upon remand. These same issues will arise again necessitating a second appeal at the expense of time and judicial resources. It is not an appellate court's responsibility to save defendants from their all-or-nothing trial tactics. We review the issues as presented and considered by the trial court. We must look beyond the captions of the motions.

{¶ 59} It is well settled under Ohio law that when a motion to dismiss for failure to state a claim for relief relies on matters outside the pleadings, the motion must be treated as a motion for summary judgment. So*liel Tans, L.L.C. v. Timber Bentley Coe, L.L.C.*, 8th Dist. Cuyahoga No. 108125, 2019-Ohio-4889, ¶ 22, citing *Sciko v. Cleveland Elec. Illum. Co.*, 83 Ohio App.3d 660, 663, 615 N.E.2d 674 (8th Dist.1992), *Park v. Acierno*, 160 Ohio App.3d 117, 2005-Ohio-1332, 826 N.E.2d 324 (7th Dist.), and *Petrey v. Simon*, 4 Ohio St.3d 154, 156, 447 N.E.2d 1285 (1983). Summary judgment under Civ.R. 56(C) is appropriate only when "[1] no genuine issue of material fact remains to be litigated, [2] the moving party is entitled to judgment as a matter of law, and [3] viewing the evidence in the light most favorable to the nonmoving party, reasonable minds can reach a conclusion only in favor of the moving party." *Id.*, citing *M.H. v. Cuyahoga Falls*, 134 Ohio St.3d 65, 2012-Ohio-5336, 979 N.E.2d 1261, ¶ 12. Once the moving party has satisfied its initial burden of identifying specific facts in the record that demonstrate an entitlement to

summary judgment under Civ.R. 56, the nonmoving party has a reciprocal burden to set forth specific facts showing there is a genuine issue for trial. *Crenshaw v. Cleveland Law Dept.*, 8th Dist. Cuyahoga No. 108519, 2020-Ohio-921, ¶ 33, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 1996-Ohio-107, 662 N.E.2d 264.

{¶ 60} I would sustain Hersh's assigned errors as presented and conclude that the trial court erred because the evidence presented does not demonstrate that the defendants are entitled to a judgment as a matter of law based on the undisputed facts presented in their respective motions.

## II. Analysis

{¶ 61} Defamation is the publication of a false statement "made with some degree of fault, reflecting injuriously on a person's reputation, or exposing a person to public hatred, contempt, ridicule, shame or disgrace, or affecting a person adversely in his or her trade, business or profession." *Jackson*, 117 Ohio St.3d 328, 2008-Ohio-1041, 883 N.E.2d 1060, at ¶ 9, citing *A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Const. Trades Council*, 73 Ohio St.3d 1, 7, 651 N.E.2d 1283 (1995); and *Hahn v. Kotten*, 43 Ohio St.2d 237, 243, 331 N.E.2d 713 (1975). In order to establish a prima facie claim for defamation, "'the plaintiff must show (1) that a false statement of fact was made, (2) that the statement was defamatory, (3) that the statement was published, (4) that the plaintiff suffered injury as a proximate result of the publication, and (5) that the defendant acted with the requisite degree of fault in publishing the statement.'" *Am. Chem. Soc. v. Leadscope, Inc.*, 133 Ohio St.3d 366, 2012-Ohio-4193, 978 N.E.2d 832, ¶ 77, quoting *Pollock*, 117 Ohio App.3d

at 368, 690 N.E.2d 903. "'In determining whether a statement is defamatory as a matter of law, a court must review the totality of the circumstances' and by 'reading the statement in the context of the entire publication to determine whether a reasonable reader would interpret it as defamatory.'" *Id.*, quoting *Mann v. Cincinnati Enquirer*, 1st Dist. Hamilton No. C-09074, 2010-Ohio-3963, ¶ 12, citing *Scott v. News-Herald*, 25 Ohio St.3d 243, 253, 496 N.E.2d 699 (1986), and *Mendise*, 69 Ohio App.3d at 726, 591 N.E.2d 789. Importantly, the individual statements within the publication "'should not be considered in isolation, but rather within the context of the entire publication and the thoughts that the publication through its structural implications and connotations is calculated to convey to the reader to whom it is addressed.'" *Id.*, quoting *Connaughton v. Harte Hanks Communications, Inc.*, 842 F.2d 825, 840 (6th Cir.1988), *aff'd*, 491 U.S. 657, 109 S.Ct. 2678, 105 L.Ed.2d 562 (1989); *Stohlmann,* 8th Dist. Cuyahoga No. 86491, 2006-Ohio-6408, at ¶ 4, fn. 1.

### a. Truth as a Defense

{¶ 62} In this case, the defendants claim that the individual statements within the publication are substantially true, negating the first element of defamation, the falsity of the statement issued. In reaching this conclusion, however, the defendants separate the individual statements instead of seeking

review of the totality of the statements within the publication.  The publication contains several statements:

> As Rabbonim in the community, we have a responsibility to protect all our members.
>
> We therefore must share with you that we have recently learned that [Hersh], is alleged to have engaged in inappropriate behavior with young men under the age of thirteen.
>
> We have also learned that police reports have been filed detailing his activities.
>
> We understand that he is attempting to create a Boy Scout troop.  We are concerned that this is a potentially unhealthy and dangerous situation.
>
> We alert you to our concerns and warn you not to let young children be in his care.

According to the defendants, the second two statements are substantially true because two police reports supposedly detailing "inappropriate behavior with young men under the age of thirteen" were filed and the defendants merely reported that fact.  The defendants then claim that their conclusion as to Hersh being a danger to the health and safety of children under the age of thirteen is constitutionally protected opinion.

{¶ 63} Those individual statements within the publication cannot be read in isolation.  Each statement within the publication builds upon the former to convey to the reader that Hersh has engaged in inappropriate behavior with "young men" under the age of thirteen of such an illegal or illicit manner as to support the

defendants' conclusion that Hersh posed a danger to the health and safety of children in general.

**{¶ 64}** Further of importance, the defendants presume that their statement regarding Hersh engaging in inappropriate conduct with young men under the age of thirteen is factually true based on the content of the police reports. Even if the hearsay within the police reports was considered, those reports themselves do not support the statement that Hersh was alleged to have engaged in inappropriate behavior with "young men" under the age of thirteen to the objective observer, especially in consideration of the defendants' claim that Hersh's danger to the children is predicated on the "inappropriate behavior" detailed in the police reports. It is true that "[w]hile a plaintiff must prove falsity, a publisher may defend the allegedly defamatory statement by showing that 'the imputation is substantially true, or as it is often put, to justify the "gist," the "sting," or the substantial truth of the defamation.'" *Stohlmann*, 8th Dist. Cuyahoga No. 86491, 2006-Ohio-6408, at ¶ 12, quoting *Natl. Medic Servs. Corp. v. E.W. Scripps Co.*, 61 Ohio App.3d 752, 755, 573 N.E.2d 1148 (1st Dist.1989), and Prosser, *Law of Torts* (4 Ed. 1971) 798-799.

**{¶ 65}** Neither of the reports, however, contained allegations setting forth any behavior supporting the statement that "Hersh is alleged to have engaged in inappropriate behavior with young men under the age of thirteen," to the extent that such a claim would support the conclusion that Hersh poses a danger to children. In the first police report, the complainant claimed that an unidentified person told him that Hersh was seen "suspiciously" holding the complainant's child's hand and

that the complainant suspected that Hersh had provided the child a cell phone that was inoperable at the time it was discovered and had been disposed of before the police report was filed. Both incidents occurred sometime over the previous "couple of years." The second police report contained an allegation that Hersh spoke with that complainant's child approximately a month before the police report was filed. Hersh had been watching the complainant's children at the time and offered to take one of the children to see the Alamo and other historic sites without his parents. Hersh is alleged to have told the child that he would ask the child's parents for permission for such a trip and provide the funding. It was also claimed that Hersh showed the child firearms while the child was in Hersh's home at some undisclosed point in time. From the general tenor of the reporting, the complainant was on good terms with Hersh and allowed her children to be under his care until the Alamo conversation. The second complainant was urged by one of the defendants to file the police report but declined to make the child available to the authorities for further investigation.

{¶ 66} Both police reports contained statements to the effect that the complainants heard through their respective communities that there were concerns with Hersh's behavior toward children, although such comments remain largely speculative and the underlying factual bases unverified. Importantly, none of the allegations set forth in the police reports appear to be criminal or sexually motivated in nature. Thus, the allegations in the police reports, one being based on conduct that allegedly occurred two years earlier, detail rather benign stories in relative

terms and nothing criminally actionable. Those details do not support the defendants' conclusion that Hersh poses a danger to the health and safety of children as a matter of law for the purposes of demonstrating the absence of genuine issues of material fact as to the falsity of the publication.

{¶ 67} Inasmuch as the defendants claim that "inappropriate behavior" does not necessarily mean sexually or criminally inappropriate behavior and therefore the publication was capable of being innocently construed, the defendants ensured that deviant connotation by referencing Hersh's alleged desire to create a Boy Scout troop, which the defendants claim to be an "unhealthy and dangerous situation" and by continuing to warn the community of the danger that Hersh poses to children. Such a loaded claim is neither innocuous nor innocent in common usage.

{¶ 68} The defendants have made no attempt to prove the veracity of their claim regarding the creation of the organization; however, that statement cannot be deemed irrelevant to the publication in its entirety. As the majority alludes to, it is widely known that the Boy Scout organization has faced damning criticism for widespread allegations of sexual abuse. Mike Baker, *Sex-Abuse Claims Against Boy Scouts Now Surpass 82,000*, Nov. 15, 2020, New York Times, available at https://web.archive.org/web/20210104114933/https://www.nytimes.com/2020/11/15/us/boy-scouts-abuse-claims-bankruptcy.html (accessed June 7, 2021). The defendants' statement regarding Hersh's alleged desire to start a Boy Scout troop cannot be brushed aside as irrelevant in light of the context within which the

publication in its entirety was made — to fulfill the defendants' obligation to protect the community from the dangers that Hersh allegedly posed to children.

{¶ 69} In order to prove the truth of the alleged defamatory statement in this case, the defendants would need evidence demonstrating to the objective listener or reader that their statement that Hersh engaged in inappropriate conduct with "young men" under the age of thirteen was conduct that actually posed a danger or was otherwise unhealthy to children. It is not enough to claim that the police reports were filed. Had the defendants limited their statement to the solitary fact of the police reports being filed, this would be a different matter. The fact that the defendants coupled the police reports and the alleged intention to commission a Boy Scout troop with their conclusion that Hersh poses a danger to the health and safety of children alters the overall connotation of the publication such that the defendants are implying knowledge of deviant facts to support their conclusion as to Hersh's propensity to commit inappropriate acts that pose a danger to children.

{¶ 70} In order to prove that the statements within the publication are substantially true, the defendants must demonstrate facts upon which it could be concluded that Hersh poses a danger to the health and safety of children, not just that two police reports detailing noncriminal and nonsexually related conduct were filed detailing what the defendants subjectively claim to be "inappropriate behavior with young men under the age of 13." This is especially evident given the "echo chamber" created by one of the defendants urging the second complainant to file the police report upon which the truth-of-publication defense is based.

**{¶ 71}** As a result, I would conclude that the defendants have not demonstrated the truth of the publication as a matter of law that would entitle them to judgment upon all claims in the summary proceedings. Accordingly, I would conclude that there are genuine issues of material fact as to whether the statements within the publication are false.

### b. Fact or Opinion

**{¶ 72}** In determining whether an alleged defamatory statement is fact or opinion, courts review the totality of the circumstances in which the publication occurs considering four factors: the specific language used; whether the statement is verifiable; the general context of the statement; and the broader context in which the statement appeared. *Vail*, 72 Ohio St.3d at 282, 1995-Ohio-187, 649 N.E.2d 182. All four factors are objective in nature. *Wampler*, 93 Ohio St.3d 111, 131, 2001-Ohio-1293, 752 N.E.2d 962. "Each of the four factors should be addressed, but the weight given to any one will conceivably vary depending on the circumstances presented." *Vail* at 282. If the publication implies that the defendant has "first-hand knowledge that substantiates the opinions he asserts," it is more likely that the statement is one of fact and not opinion. *Id.* at 283. "[W]hether a statement is fact or opinion is a question of law to be determined by the court." *Sikora*, 8th Dist. Cuyahoga No. 81465, 2003-Ohio-3218, ¶ 16, citing *Wampler* at 126, and *Scott*, 25 Ohio St.3d 243, 496 N.E.2d 699 (1986).

**{¶ 73}** The defendants in this case implied firsthand knowledge of facts substantiating the asserted opinion. The publication was issued from leaders within

the religious community for the express purpose of fulfilling their obligation "to protect all our members." The very purpose of the publication was to inform the community of a specific danger; in other words, the publication implied knowledge of facts that substantiated the opinion that Hersh represented a danger to the health and safety of the young children in the community. That statement is verifiable but not with the allegations advanced in the police reports. *See, e.g., Stohlmann*, 8th Dist. Cuyahoga No. 86491, 2006-Ohio-6408, at ¶ 12. In *Stohlmann*, a five-month-old child had died under the care of a plaintiff's at-home daycare. *Id.* at ¶ 2. The cause of death was unknown, but the plaintiff was nonetheless indicted with multiple counts of child endangerment, tampering with evidence, and falsification. *Id.* Given the subject matter, the events gave rise to news coverage in which one organization claimed that the plaintiff had admitted her role in the child's death, that prosecutors claimed the plaintiff had abused two other children, and interviewed parents involved who voiced their extreme, and justifiable, displeasure with the plaintiff's conduct. *Id.* The news reported several objective facts regarding the underlying incident and guilty plea, and then provided a podium upon which the parents of the deceased child could speak. *Id.* The panel found relevant the fact that the news organizations limited their statements to facts gleaned from the police reporting and the ensuing criminal action, and the publication of the parents' statements were opinions, in large part based on the fact that the parents' statements were tempered with opinionated prefixes such as "I think" or "I feel" but

related to verifiable facts, but that the objective reporting of what had occurred was based on the factual foundation. *Id.* at ¶ 29-33.

{¶ 74} In this case, the defendants prefaced the publication with an express statement of fulfilling their duty to protect the community but did not limit themselves to reporting the fact of the allegations in the police report. The facts underlying the claim that Hersh poses a danger to children are verifiable, and any warning was expressed in the context of moral and institutional leaders taking action to prevent harm. *Dudee*, 2019-Ohio-3939, 133 N.E.3d 590, at ¶ 62, quoting *Hotchner*, 551 F.2d at 913 (2d Cir.1977), and *Wayt*, 2017-Ohio-7734, 97 N.E.3d 903, at ¶ 138 (5th Dist.) (defamation may be proven through a negative characterization of a person coupled with a distinct but false implication that the author is privy to facts about the person that are unknown to the reader, especially the speaker's position of authority). The police reports themselves do not provide undisputed evidence that Hersh poses a danger to anyone. The publication in this case is not merely offered as an opinion, one that can be taken or left alone, but rather is a call to action to actively avoid Hersh based on the defendants' implied knowledge of a verifiable fact — that the allegations of Hersh engaging in inappropriate behaviors with young men under the age of thirteen posed a danger to the children.

**{¶ 75}** I would conclude that the publication as a whole does not constitute constitutionally protected opinion, but instead implies knowledge of verifiable facts that support the defendants' conclusion that Hersh poses a danger to children.[1]

### c. Qualified Privilege as Affirmative Defense

**{¶ 76}** In Ohio, if a plaintiff establishes a prima facie case of defamation, the defendant may invoke a qualified privilege. *Jackson*, 117 Ohio St.3d 328, 2008-Ohio-1041, 883 N.E.2d 1060, at ¶ 9, citing *A & B-Abell Elevator Co.*, 73 Ohio St.3d at 1, 7, 651 N.E.2d 1283, and *Hahn*, 43 Ohio St.2d at 246, 331 N.E.2d 713. In order to demonstrate the qualified privilege to utter a defamatory statement, the defendant must demonstrate "'good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and *publication in a proper manner and to proper parties only*.'" (Emphasis added.) *Id.*, quoting *Hahn* at 246. If a qualified privilege is established, the plaintiff must demonstrate actual malice. *Id.*, citing *Jacobs*, 60 Ohio St.3d 111, 573 N.E.2d 609, at paragraph two of the

---

[1] Hersh included a claim for defamation *per se* and *per quod.* In the former, damages are presumed while the latter requires allegations of special damages. *Rosado-Rodriquez v. Nemenz Lincoln Knolls Mkt.*, 7th Dist. Mahoning No. 19 MA 0098, 2020-Ohio-4814, ¶ 20, quoting *Hampton v. Dispatch Printing Co.*, 10th Dist. Franklin No. 87AP-1084, 1988 Ohio App. LEXIS 3757, 2 (Sept. 13, 1988); *Dudee* at ¶ 72. The trial court, conceding the issue was not raised by the defendants in their motions, *sua sponte* concluded that Hersh failed to plead special damages as it pertains to the defamation *per quod* claim. No court should decide cases on the basis of an unbriefed issue without providing the party opposing the motion notice of the court's intention and an opportunity to brief the issue first identified by the trial court. *See, e.g., State v. Tate*, 140 Ohio St.3d 442, 2014-Ohio-3667, 19 N.E.3d 888, ¶ 21, quoting *State v. 1981 Dodge Ram Van*, 36 Ohio St.3d 168, 170, 522 N.E.2d 524 (1988). As is relevant to this appeal, the defendants have not provided any arguments in support of the trial court's conclusion with respect to the specificity of the pleadings. App.R. 16(A)(7). We accordingly should not consider the special-damages issues in this appeal.

syllabus. "In a qualified privilege case, 'actual malice' is defined as acting with knowledge that the statements are false or acting with reckless disregard as to their truth or falsity." *Id.*, citing *Jacobs* at paragraph two of the syllabus.

{¶ 77} The defendants failed to produce any evidence demonstrating the essential elements of the affirmative defense of qualified privilege. The defendants claimed in their motions to dismiss to have had a good faith belief in uttering the defamatory statement regarding a common interest to be upheld that was limited in its scope and issued only on a proper occasion. There is no evidence in the record substantiating the defendants' belief in light of the procedural posture of this case. But more important, the publication was widely disseminated to all members of the religious community, including being posted in communal spaces, sent to a news organization, and used in publicly accessible blogs postings. *Mosley v. Evans*, 90 Ohio App.3d 633, 637, 630 N.E.2d 75 (11th Dist.1993) (at trial defendants demonstrated the applicability of qualified privilege affirmative defense and in particular demonstrated that the statements were published exclusively to other members of the church).

{¶ 78} Although the defendants' stature and position of authority in the religious community may be a basis to assert qualified privilege, the defense is not so broad as to permit wholesale dissemination of defamatory statements to those that do not share the common interest. For example, in *McCartney v. Oblates of St. Francis deSales*, 80 Ohio App.3d 345, 356, 609 N.E.2d 216 (6th Dist.1992), it was concluded that an educator's statements to parents of a child who had been

interacting with the plaintiff fell under qualified privilege in light of the educator's and parents' shared interest in "the training, morality and well-being of the children in their care." The important distinction is that the privilege was limited as between the specific parents of the child who interacted with the plaintiff and the educator.

{¶ 79} The facts of *McCartney* are distinguishable from the allegations advanced in this case in which the defendants widely distributed the publication regardless of any shared interest between the religious leader and the parents of the affected children. There is no factual basis to conclude that the publication was made available only to those with a common interest to protect children. As the trial court concluded, the publication "was read aloud during faith services and made viewable in written form at synagogues" irrespective of whether the entire congregation had children under the age of thirteen in their homes. Further, the posting of the publication on a bulletin board left the publication open to inspection and public dissemination. Since it was widely disseminated to several congregations regardless of whether the recipient of the information had children under the age of thirteen, or even knew Hersh, and was disseminated to the public beyond the congregations, it cannot be concluded that the defendants are entitled to judgment as a matter of law. At the least, I would conclude that there are genuine issues of material fact in need of resolution with respect to the applicability of the qualified privilege defense.

## d. False Light and Infliction of Emotional Distress Claims

{¶ 80} The trial court further granted judgment upon the false light and intentional or negligent infliction of emotional distress claims that must briefly be addressed. As the trial court concluded,

> To establish false light invasion of privacy, a plaintiff must show: (1) the defendant gave publicity to a private matter concerning the plaintiff (2) the publicity placed the plaintiff in a false light; (3) the false light would be highly offensive to a reasonable person; and (4) the defendant had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the plaintiff would be placed. *See Welling v. Weinfeld*, 113 Ohio St.3d 464, 2007-Ohio-2451, 866N.E.2d 1051, syllabus.

> To be actionable false light, "the statement made must be untrue." Id. at 471; *see also Murray v. Chagrin Valley Publishing Co.*, 2014-Ohio-5442, 25 N.E.3d 1111, 51 38 (8th Dist.) (finding there must be untruthful statements commenting on private matters to be actionable false light); see also Restatement of the Law 2d, Torts, Section 652E, Comment c.

The defendants argue that the false light claims fail as a matter of law based on the truth of the publication or, in the alternative, because the publication is a constitutionally protected opinion. The judgment entered in favor of the defendants should be declared to be in error in light of my earlier analysis.

## III. Conclusion

{¶ 81} Finally, it must be noted that the majority's conclusion that the police reports should not be considered as being outside the scope of Civ.R. 56(C) or that the plaintiff was deprived of an opportunity to present his own evidence are not issues preserved for our review and should not guide it. App.R. 16(A)(7). Even if the court treated the defendants' motions as ones for summary judgment, the

defendants were provided the opportunity to present the factual backgrounds of their respective positions, and Hersh did not object to the failure of the defendants to properly submit the police reports considered as extraneous evidence by the trial court. *LTF 55 Properties v. Charter Oak Fire Ins. Co.*, 8th Dist. Cuyahoga No. 108956, 2020-Ohio-4294, ¶ 34 (the failure to otherwise object to improperly admitted evidence submitted by a party in consideration of a motion for summary judgment waives any error in considering that evidence under Civ.R. 56(C)), quoting *Citizens Bank, N.A. v. Richer*, 8th Dist. Cuyahoga No. 107744, 2019-Ohio-2740, ¶ 32, and *Stegawski v. Cleveland Anesthesia Group, Inc.*, 37 Ohio App.3d 78, 83, 523 N.E.2d 902 (8th Dist.1987). In fact, Hersh has never contended that he was deprived of the opportunity to present evidence that would have defeated the defendants' motions. Instead, Hersh presented legal arguments demonstrating the viability of his claims as a matter of law even when construing the extraneous evidence presented by the defendants.

{¶ 82} Since the trial court considered evidence outside of what was properly attached to the pleadings and primarily relied on cases resolving defamation claims upon summary judgment, the trial court's decision must be construed under the Civ.R. 56 evidentiary standards. Civ.R. 12(B); *Soliel Tans,* 8th Dist. Cuyahoga No. 108125, 2019-Ohio-4889, at ¶ 22. The trial court entered final judgment in favor of the defendants upon all claims as a matter of law after expressly considering the pleadings and evidentiary materials supplied by the defendants. Civ.R. 56(C). Had the defendants thought the trial court overstepped the bounds of

review, they could have sought an alternative ruling by asking this court to review the matter only under Civ.R. 12(B)(6) and have the case remanded to fix their procedural deficiencies — although such a claim should be overruled as harmless error in light of the fact that the defendants induced the court into considering evidence outside the pleadings in rendering its legal conclusions. *Marshall*, 81 Ohio St.3d at 471, 1998-Ohio-329, 692 N.E.2d 198.

{¶ 83} This distinction in the standard of review weighs heavy on the case. The majority claims that the trial court erred by considering the extraneous evidence, and essentially ends its analysis there providing relief to the parties not actually sought, but remanding without rendering any decisions on the legal conclusions that are reviewed as a matter of law. In essence, the defendants will get a second bite at the same apple of claiming entitlement to a judgment as a matter of law after fixing the procedural deficiencies identified by the majority — potentially delaying resolution of the matter squarely before us for a considerable period of time based on the very error that the defendants induced the trial court into making in the first place.

{¶ 84} I would address the arguments as presented under Civ.R 56 as the trial court resolved the matter and the parties framed the issue and conclude that the defendants are not entitled to judgment as a matter of law. Such a ruling would not only enable Hersh to conduct discovery but it would grant Hersh the relief requested: that the defendants' defenses at this point require resolution by the trier

of fact and not through a summary disposition. For the foregoing reasons, I respectfully dissent.